George W. WHITTLE et al., Appellants,

v.

W. J. JOHNSTON et al., Appellees.

No. 7627.

Court of Civil Appeals of Texas.

Texarkana.

June 29, 1965.

Rehearing Denied July 27, 1965.

J. D. McLaughlin, Fisher, McLaughlin & Harrison, Paris, B. F. Edwards, Clarksville, for appellants.

Austin Guest, Pat C. Beadle, Clarksville, for appellees.

DAVIS, Justice.

A trespass to try title suit filed in the District Court of Red River County, Texas, on April 30, 1955, by plaintiff, George W. Whittle, against defendant, W. J. Johnston, for title to a 100 acre tract of land under the ten year statute of limitation which is located on the East Boundary Line of the William Mays H. R. Survey in Red River County, Texas. George W. Whittle died December 21, 1956. On May 10, 1963, plaintiffs-appellants Leona Whittle, a widow, Lucille Braddock, a single woman, Aileen Harmening Phelps and husband, Hubert Phelps, filed their amended petition against defendants-appellees, W. J. Johnston, K. C. Enox and wife, Annie Belle Enox, seeking to recover the 100 acres of land under the ten year statute of limitation. The case was tried before the court, without a jury, and judgment was rendered that plaintiffs-appellants take nothing. From this judgment, the appellants have perfected their appeal and bring forward six points of error.

By points 1, 4, 5, and 6, appellants say the trial court erred in failing to render judgment in their favor because appellants, and their predecessors in title under whom appellants claimed the 100 acres of land, had perfected their title under the ten year statute of limitation prior to April 30, 1955; that the judgment rendered by the trial court is contrary to and against the great weight and preponderance of the evidence; and, the judgment is not supported by sufficient evidence of probative force to sustain the same. According to the transcript, W. J. Johnston filed an answer and a plea of not guilty on December 30, 1957, along with a cross-action. On August 1, 1962, W. J. Johnston and wife, Annie M. Johnston, conveyed all their undivided interest in and to a 100 acre tract of land situated on the North Boundary Line of the William Mays Survey to K. C. Enox and wife, Annie Belle Enox. There was a plat offered in evidence that clearly shows that there

are two 100 acre tracts of land situated in the William Mays Survey. The tract of land involved in this suit is situated on the East Boundary Line of said survey and is altogether a different tract than the 100 acre tract situated on the North Boundary Line of the Mays Survey and they do not touch each other. On August 31, 1962, appellants, K. C. Enox and wife, Annie Belle Enox, filed a plea of not guilty. On May 11, 1964, after the case went to trial, appellee, W. J. Johnston, dismissed his cross-action and went to trial upon his plea of not guilty and the plea of the statute of limitation. After the case had started to trial, the trial court permitted appellees K. C. Enox and wife, Annie Belle Enox, to file a trial amendment wherein they allege they had peaceable and adverse possession of the land and tenements enclosed in a fence, cultivating, using and enjoying the same for a period of 10 years AFTER the cause of action had accrued and BEFORE THE COMMENCEMENT OF THIS SUIT.

According to the evidence in the case, which is wholly undisputed, the 100 acres of land was in the possession of A. J. "Jack" Whittle. A. J. "Jack" Whittle is the father of George W. Whittle. The evidence shows that A. J. "Jack" Whittle paid the taxes on the 100 acres of land for the year 1903. C. W. Warren testified that his father bought a tract of land joining the 100 acres in controversy in the year 1905. That his father built a sawmill on the tract of land adjacent to the 100 acres involved. In the year 1906, A. J. "Jack" Whittle and his boys, the father of C. W. Warren, assisted by C. W. Warren, built a plank and barbed wire fence around the 100 acres. In the year 1906, the father of C. W. Warren "made a deal" with A. J. "Jack" Whittle to put some log teams and some bulls on the 100 acre tract of land in question. Warren testified that he was personally acquainted with the land from 1906 until 1924, and the reputation of who owned the property in the community was that it was

owned by A. J. "Jack" Whittle, and all during the time the property was under fence. During the time, Warren testified that Whittle kept hogs, cattle, colts, etc., on the enclosed 100 acre tract of land. That the land was known in the community as A. J. "Jack" Whittle's land. The reputation was notorious.

Appellant, Leona Whittle, testified that she had been acquainted with the land for more than 47 years. That she and George W. Whittle were married more than 47 years ago and she had been acquainted with the property before said marriage. That since her marriage, that she and the person whose title they held had had peaceable and adverse possession of the same, cultivating, using and enjoying the same from the date of her marriage until the date the suit was filed.

According to the evidence, A. J. "Jack" Whittle rented the house that was on the land involved to Bob Warren, father of C. W. Warren, and a foreman for the Warren mill moved into the house and lived there until his wife burned to death. The Warrens then moved another man into the house who worked for them, and then finally moved a bunch of Negroes in there.

In 1940, A. J. "Jack" Whittle sold the timber off the farm to Cummer-Garham Lumber Company through Claude Smith for a consideration of $70.00. Appellee, K. C. Enox, was assisting Smith in purchasing the timber, and Smith paid appellee Enox a $50.00 commission for the purchase. The timber was bought from A. J. "Jack" Whittle, the owner of the land. Smith testified that he put the sawmill on the land, that the reputation of who owned the land in the community was notorious and that the land belonged to A. J. "Jack" Whittle. The appellees offered several witnesses who testified to the fact that the land had been fenced for a period of more than 10 years and that none of the Johnstons had placed any claim on it whatever. There was some testimony that one of the heirs told one of the witnesses that he owned a small interest in the land, "but it was such a little, he wouldn't fool with it". This statement was made about thirty years ago. At no time after the year 1903 did any of the Johnstons make any claim at all to the 100 acre tract of land. According to the evidence, they moved away from the land, and shortly thereafter it was known as the A. J. "Jack" Whittle land and has remained in their possession, without any interruption of title, until April 30, 1955.

There is much more evidence than that hereinabove listed. There is no evidence by either of the appellees that supersedes the superior title as shown by the appellants. The facts of adverse possession and claim of any right from the year 1906 to April 30, 1955, is absolutely undisputed. In a trespass to try title suit where the facts are undisputed, whether the limitation has ripened is a question of law. McLendon v. Comer (Tex.Civ.App.) 200 S.W.2d 427, W.R., N.R.E.; Chittim v. Auld (Tex. Civ.App.) 219 S.W.2d 702, W.R., N.R.E.; 2 Tex.Jur.2d 353, Secs. 209–210. The facts are undisputed that A. J. "Jack" Whittle was in possession of the land and was actually using the same from the year 1903 until his death on March 13, 1946. That the use was visible, open, notorious and peaceable for a consecutive period of for more than 10 years. It must be presumed that he held the land for himself as owner and his claim was inconsistent and hostile to the claim of all others. Hartman v. Huntington (Tex.Civ.App.) 32 S.W. 562, E.R.; Lion Oil Refining Co. v. White (Tex.Civ.App.) 138 S.W.2d 290, N.W.H.; Black v. Terry County (Tex.Civ.App.) 183 S.W.2d 685, N.W.H. Possession of realty under a claim of right is subject to inheritance. The adverse possession of the land in question by A. J. "Jack" Whittle was inherited by appellants. Salinas v. Gutierrez (Tex.Civ.App.) 341 S.W.2d 558, W.R., N.R.E. The laws of Texas pro-

vide that the peaceable and adverse possession need not be continued in the same person, but there may be tacking by one person of the claim of another so long as there is privity of estate between them. Art. 5516 Vernon's Ann.Rev.Civ.St.; McAnally v. Texas Company, 124 Tex. 196, 76 S.W.2d 997. The privity of estate is not privity of title, but privity of possession. Art. 5516 R.C.S. Hutto v. Cook, 139 Tex. 571, 164 S.W.2d 513.

■ Since it was shown that title to this property was acquired by A. J. "Jack" Whittle during his lifetime, at least appellants are co-tenants of the property with the other heirs of A. J. "Jack" Whittle. Appellees are trespassers as to the title of this property that is vested in appellants, and any other heirs of A. J. "Jack" Whittle. A co-tenant may maintain an action in trespass to try title against a trespasser and recover the entire possession. And as to such stranger, the title to the defense of outstanding title is unavailable. 15 T.J.2d 216, Sec. 46; Dahlberg v. Holden, 150 Tex. 179, 238 S.W.2d 699; Reiter v. Coastal States Gas Producing Co. (Sup.Ct.) 382 S.W.2d 243. The points of error are sustained.

■ By points 2 and 3 appellants say the trial court erred in rendering judgment for appellees because the claim and title of appellants was not attacked by the abstract of title filed in writing by the defendants and the court erred in rendering judgment in favor of appellees when the uncontradicted evidence showed that the appellees were trespassers to the land in question; and, that appellants were in "prior possession" thereof. It has already been pointed out that the description of land claimed by appellees, K. C. Enox and wife, Annie Belle Enox, is situated on the North Boundary Line of the William Mays Survey. As a matter of fact, W. J. Johnston did not own or claim any right, title or interest in the land at the time of the trial. He was merely trying to defend the case upon his warranty of title.

As a matter of fact, any title that appellee Johnston might have previously held was already acquired by the Whittles. Appellee Johnston was a trespasser. The deed from Johnston to Enox and wife conveyed a different tract of land than that involved in this lawsuit. This being true, appellants were entitled to the judgment. Looney v. First National Bank of Floresville (Tex.Civ.App.) 322 S.W.2d 53; Butler v. Duffey (Tex.Civ.App.) 288 S.W. 598, N.W.H.

Appellees are naked trespassers to appellants and tortiously came upon the land in 1955. Appellees ousted appellants from the land and appellants resorted to an orderly procedure to establish title. Appellants made a prima facie case of title under the statute of limitation. The law is harsh against a trespasser who has possession and occupies the land under a prior claim of right. The presumption is that the one who is vested with possession is vested with title. Cannan v. Walker (Tex.Civ.App.) 385 S.W.2d 271, W.R., N.R. E.

Land title, such as the one here in dispute, will be settled by an orderly procedure under the law and defeat the very purpose of the laws designed to regulate society in this regard. Speaking of the law in this regard, the Supreme Court of the United States of America in Bradshaw v. Ashley, 180 U.S. 59, 21 S.Ct. 297, 45 L.Ed. 423, had this to say:

"Therefore, when in an action of ejectment the plaintiff proves that on the day named he was in the actual, undisturbed, and quiet possession of the premises and the defendant thereupon entered and ousted him, the plaintiff has proved a prima facie case, the presumption of title arises from the possession, and, unless the defendant prove a better title, he must himself be ousted. Although he proves that some

third person, with whom he in no manner connects himself, has title, this does him no good, because the prior possession of the plaintiff was sufficient to authorize him to maintain it as against a trespasser, and the defendant, being himself without title, and not connecting himself with any title, cannot justify an ouster of the plaintiff. This is only an explanation of the principle that the plaintiff recovers upon the strength of his own title. His title by possession is sufficient, and it is a title, so far as regards a defendant who only got into possession by a pure tort, a simple act of intrusion or trespass, with no color or pretense of title."

In a recent case, the Supreme Court of Texas in Reiter v. Coastal States Gas Producing Co., 382 S.W.2d 243, quoting from Bradshaw v. Ashley, supra, said:

"The doctrine of 'prior possession' should be a simple one as it is designed to maintain public peace and order. In essence it proceeds upon the theory that one in possession should not be disturbed unless it be by one having a better title. In Bradshaw v. Ashley, supra, which undoubtedly represents the prevailing American rule, the United States Supreme Court categorically stated:

" 'The presumption of title arises from the possession, and, unless the defendant prove a better title, he must himself be ousted. Although he proves that some third person, with whom he in no manner connects himself, has title, this does him no good, because the prior possession of the plaintiff was sufficient to authorize him to maintain it as against a trespasser, and the defendant, being himself without title, and not connecting himself with any title, cannot justify an ouster of the plaintiff.' "

All the action taken by the appellees after the suit was originally filed had nothing to do with the title that already had been acquired by the appellants. At least, it was not sufficient to oust them of the title that they had acquired. The points are sustained.

The judgment of the trial court is reversed and the judgment is here rendered in favor of the appellants.

Reversed and rendered.