**KINDER MORGAN NORTH TEXAS PIPELINE, L.P., Appellant,**

v.

**William R. JUSTISS, II, Darlene E. Justiss, Thomas H. Alspaugh, and Judy Alspaugh, Appellees.**

No. 06–05–00110–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 10, 2006.

Decided Sept. 5, 2006.

428

Frederick D. Junkin, Andrews Kurth, LLP, Houston, R. Wesley Tidwell, Ellis & Tidwell, LLP, Paris, for appellant.

James R. Rodgers, Judy Hodgkiss, The Moore Law Firm, LLP, Paris, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

This appeal arises from a lawsuit regarding a tract of land formerly used as a railroad right-of-way (railroad tract), but which had not been used for that purpose in decades. Kinder Morgan North Texas Pipeline, L.P., obtained a deed without warranty to the railroad tract to use in construction of a pipeline. The jury found that William R. Justiss, II, and wife, Darlene E. Justiss, and Thomas H. Alspaugh, and wife, Judy Alspaugh, had adversely possessed the railroad tract. The jury awarded both couples compensatory and exemplary damages. On appeal, Kinder Morgan raises sixteen points of error. The points of error can be summarized as follows: 1) the evidence of adverse possession is legally and factually insufficient, 2) the evidence of actual damages is legally and factually insufficient, and 3) the evidence of exemplary damages is legally and factually insufficient.

### Background

In the late nineteenth century, the Texas Midland Railroad obtained a fee simple interest in the railroad tract. Over the years, ownership changed hands and the title eventually passed to Southern Pacific Railroad Company. In the early 1970s, the North Sulphur River flooded at least twice, damaging a railroad bridge. Sometime in 1975 or 1976, Southern Pacific removed the tracks and crossties from the railroad tract. Ultimately, Union Pacific Railroad Company obtained record title.

Shortly after the removal of the tracks and crossties in the mid–1970s, the Justisses and the Alspaughs fenced the disputed portions of the railroad tract. Since that

time, the Justisses and the Alspaughs have maintained the fences and used the railroad tract for a variety of purposes, including growing crops, running cattle, and for flood control.

After conducting a record search, Kinder Morgan contacted Union Pacific concerning the railroad tract. Union Pacific confirmed title ownership, and Kinder Morgan eventually obtained a deed without a warranty to the railroad tract from Union Pacific. Sometime in 2001, Thomas Alspaugh observed surveyors on his and the Justisses' properties. Alspaugh informed the surveyors they did not have permission to be on the property. The Alspaughs' and the Justisses' attorney had a letter hand-delivered to Kinder Morgan. Kinder Morgan responded to this letter, referencing the deed without warranty from Union Pacific as proof of ownership. The Alspaughs and Justisses introduced into evidence at trial a letter to Kinder Morgan, responding to its claim of ownership by virtue of the deed from Union Pacific.[1] In the letter, the Justisses and the Alspaughs claimed ownership through adverse possession.

Despite being put on notice of possible adverse possession claims, Kinder Morgan proceeded to construct the pipeline. Following a series of confrontations between the Justisses and Kinder Morgan's contractors, Kinder Morgan sought and obtained a temporary injunction against the Justisses and the Alspaughs. The Justisses and the Alspaughs filed a general denial and a counterclaim, alleging they had adversely possessed the disputed property. While the lawsuit was pending, Kinder Morgan completed the construction of the pipeline. In the process of doing so, ap-

proximately 1,000 trees were removed and the levee, which the railroad had constructed to control flooding, was flattened. After construction was completed, Kinder Morgan supplemented its original petition asserting an alternative cause of action to condemn an easement across the railroad tract. Before trial, the court granted Kinder Morgan's motion for partial summary judgment on the issue of condemnation. At trial, the jury found the Justisses and the Alspaughs had adversely possessed the portions of the railroad tract adjoining their properties. The jury awarded the Justisses $25,000.00 in compensation for the condemned easement, $60,000.00 in damages sustained to their remaining property, and $100,000.00 for the loss of use of the railroad tract. The jury awarded the Alspaughs $10,000.00 in compensation for the condemned easement, $50,000.00 in damages sustained to their remaining property, and $50,000.00 for the loss of use of the railroad tract. In addition, the jury awarded each couple $100,000.00 in exemplary damages. The trial court denied Kinder Morgan's motion for judgment notwithstanding the verdict except for that portion concerning loss of use damages.[2] The trial court rendered judgment for $95,000.00 in actual damages to the Justisses and $70,000.00 in actual damages to the Alspaughs. The trial court also rendered judgment for $100,000.00 in exemplary damages to each couple.

## Summary

We first address whether Kinder Morgan preserved its factual sufficiency points of error for our review and conclude it did preserve factual sufficiency concerning the actual damages, but failed to preserve its

---

1. We note Kinder Morgan claims this letter was never received. Counsel for the Justisses and the Alspaughs testified the letter was mailed to Kinder Morgan.

2. The trial court orally suggested a remittitur, reducing the loss of use damages to $10,000.00 for each couple.

factual sufficiency arguments relating to the jury's findings on adverse possession and exemplary damages. We reject Kinder Morgan's argument that recitals contained in a deed of trust relating to the Justisses' adjoining property is, as a matter of law, an acknowledgment of title in another. The evidence that the Justisses and the Alspaughs adversely possessed the railroad tract is legally sufficient. Further, the evidence is factually sufficient even if Kinder Morgan had preserved error. Next, we conclude the evidence is legally and factually sufficient for the damages relating to the condemnation and the damages to adjoining property. However, we conclude that the evidence concerning the award for loss of use damages, as to both the Justisses and the Alspaughs, is factually insufficient. Last, we conclude that the evidence is legally insufficient to support the award of exemplary damages.

**PRESERVATION OF ERROR**

■ Before we address the merits of Kinder Morgan's contentions, we must first determine whether Kinder Morgan has preserved all its issues raised on appeal. In its brief, Kinder Morgan challenges both the legal and factual sufficiency of the evidence. Although Kinder Morgan filed a motion for JNOV, a factual sufficiency point of error must be preserved with a motion for new trial.[3] However, a motion should be construed by its substance to determine the relief sought, not merely by its form or caption. *Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex.1999); *Rittenhouse v. Sabine Valley Ctr. Found., Inc.*, 161 S.W.3d 157, 164 (Tex.App.-Texarkana 2005, no pet.).

■ In its fifteen-page motion for JNOV, Kinder Morgan focused on whether the evidence was legally sufficient. The motion, though, does argue, in the alternative, that the awards concerning the value of the condemned easement, the loss of use, and the damages to the Justisses' and the Alspaughs' adjoining property should be reduced. Although the motion does not allege the jury's verdict was so contrary to the great weight and preponderance of the evidence as to be manifestly unjust or clearly wrong, the essence of the argument is that the damages are excessive. A challenge alleging that the damages awarded by the jury are excessive, including a request for a remittitur, is reviewed as a factual sufficiency challenge. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.1998); *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex.1987); *Baribeau v. Gustafson*, 107 S.W.3d 52, 61 (Tex.App.-San Antonio 2003, pet. denied), *cert. denied*, 543 U.S. 871, 125 S.Ct. 272, 160 L.Ed.2d 118 (2004).

Based on its substance, Kinder Morgan's motion for JNOV preserved factual sufficiency concerning the condemnation award, loss of use damages, and damages to the adjoining property. Although the motion did not specifically state the evidence was factually insufficient, the motion did argue the damages were excessive. Because the issue of whether damages are excessive involves a factual sufficiency

---

**3.** Although the Rules of Civil Procedure do not require a motion for new trial to preserve many issues, the rules do require a motion for new trial to preserve factual sufficiency challenges. *See* Tex.R. Civ. P. 324(b); *Roberson v. Collins*, No. 01–05–000471–CV, —— S.W.3d ——, 2006 WL 2192779, 2006 Tex.App. LEXIS 6919 (Tex.App.-Houston [1st Dist.] Aug. 3, 2006, no pet. h.); *Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 60 (Tex.App.-Texarkana 2004, pet. denied); *U.S.A. Precision Machining Co. v. Marshall*, 95 S.W.3d 407, 411 (Tex. App.-Houston [1st Dist.] 2002, pet. denied); *Hawthorne v. Guenther*, 917 S.W.2d 924, 937 (Tex.App.-Beaumont 1996, writ denied) (excessiveness of punitive damages not preserved).

challenge, Kinder Morgan's motion was in essence a motion for new trial concerning the loss of use damages, the condemnation of the easement damages, and the damages to the Justisses' and the Alspaughs' adjoining properties.

Kinder Morgan, however, failed to preserve its factual sufficiency arguments relating to the adverse possession claims and the exemplary damages. In its motion for new trial, a party must specifically point out the deficiencies in a manner that adequately apprises the trial court of those deficiencies. *Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.,* 927 S.W.2d 146, 150 (Tex.App.-Corpus Christi 1996, no writ); *see* TEX.R.APP. P. 33.1. Kinder Morgan failed to argue the evidence was factually insufficient concerning either of these issues. Instead, Kinder Morgan only argued there was no evidence of adverse possession and no evidence of malice. Thus, Kinder Morgan has not preserved the issues of whether the evidence of adverse possession, or the evidence in support of exemplary damages, is factually sufficient.

## STANDARDS OF REVIEW

When deciding a legal sufficiency challenge, we must consider all the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). We are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). A legal sufficiency point of error will be sustained when 1) there is a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla; or 4) the evidence conclusively establishes the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 262 (Tex.2002). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996).

If we find some probative evidence, we will test the factual sufficiency of that evidence by examining the entire record to determine whether the finding is clearly wrong and unjust. When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all the evidence, not just that evidence which supports the verdict. *Ellis,* 971 S.W.2d at 407. A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.; Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The court of appeals is not a fact-finder. Accordingly, the court of appeals may not pass on the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex.2003); *Ellis,* 971 S.W.2d at 407. If we find the evidence insufficient, we must clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be

manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

ADVERSE POSSESSION

■ Adverse possession requires a showing of "actual, exclusive, continuous, visible, and notorious possession, distinct and hostile" for the duration of the statutory period. *W.T. Carter & Bros. v. Holmes*, 131 Tex. 365, 113 S.W.2d 1225, 1226 (1938). To prevail on a claim of adverse possession under Section 16.026(a), the elements that must be proved are: 1) actual and visible possession of the disputed property; 2) that is adverse and hostile to the claim of the owner of record title; 3) that is open and notorious; 4) that is peaceable; 5) that is exclusive; and 6) the property was consistently and continuously cultivated, used, or enjoyed for ten years. TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.021, 16.026(a) (Vernon 2002); *see Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 193–94 (Tex.2003); *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 213 (Tex.App.-Texarkana 2006, pet. denied).

■ In determining what will amount to "adverse possession," considerable importance is placed on the nature of the land and its use. *Mohnke v. Greenwood*, 915 S.W.2d 585, 593 (Tex.App.-Houston [14th Dist.] 1996, no writ). While the claimant's actions must be of such a character as to unmistakably indicate a claim of exclusive ownership, whether adverse possession of property has been established is normally a question of fact, rather than a question of law. *Rhodes v. Cahill*, 802 S.W.2d 643, 645–46 (Tex.1990).

Kinder Morgan contends the evidence supporting a finding of adverse possession is insufficient because the Justisses admitted Southern Pacific owned the railroad tract. In addition, Kinder Morgan claims the evidence failed to establish the Justisses' or the Alspaughs' actions were inconsistent with and hostile to the ownership of the railroad tract by Southern Pacific and failed to show the Justisses continuously cultivated, used, or enjoyed the disputed portions of the railroad tract.

*Justisses' Adverse Possession Claim Not Defeated by Loan Application*

■ According to Kinder Morgan, the Justisses' claim of adverse possession fails, as a matter of law, because the Justisses executed, and allowed to be filed in the records of Lamar County, a deed of trust containing recitals acknowledging the railroad tract was owned by Southern Pacific. In 1983, the Justisses applied for a loan from the Federal Land Bank, secured by their property adjoining the railroad tract. The deed of trust filed in connection with the loan included a survey containing recitals referencing the railroad tract as "railroad property" and as being owned by the "Southern Pacific Railroad." Kinder Morgan contends the recitals constitute an admission, defeating the Justisses' adverse possession claim.

Kinder Morgan cites *Bruni v. Vidaurri*, 140 Tex. 138, 150, 166 S.W.2d 81, 88 (1942), for the proposition that acknowledgment of title in another will defeat an adverse possession claim. Kinder Morgan claims the recitals defeat the claim of adverse possession as a matter of law. In *Bruni*, the Texas Supreme Court held that an offer to purchase property creates a fact issue concerning whether possession before the offer was adverse. *Id.* Ultimately, the Texas Supreme Court determined the evidence was sufficient to support the jury's determination of adverse possession, despite the offer to purchase the property. *Id.* Although *Bruni* does state in dicta that an acknowledgment of title in another will defeat an adverse possession claim, *Bruni* does not stand for the proposition that recitals in a deed constitute an acknowledgment of title as a matter of law.

■ Under circumstances similar to this case, Texas courts have disagreed with Kinder Morgan's proposition. A mere mention of an adjoining tract in describing the location of another tract being conveyed is not conclusive recognition of title to the adjoining tract. *Halsey v. Humble Oil & Ref. Co.*, 66 S.W.2d 1082, 1091–92 (Tex.Civ.App.-Beaumont 1933, writ denied). A recital in a contract is not binding in a suit that is not based on that contract. *Perry Nat'l Bank v. Eidson*, 161 Tex. 340, 340 S.W.2d 483, 486 (1960); *Earwood v. Smart*, 107 S.W.3d 1, 5 (Tex.App.-San Antonio 2002, pet. denied). Further, whether an adverse claimant's conduct constitutes an acknowledgment of title in another is a question of fact. *Bruni*, 166 S.W.2d at 88; *Cuniff v. Bernard Corp.*, 94 S.W.2d 577 (Tex.Civ.App.-Beaumont 1936, writ ref'd).

In a similar case, this Court has held such admissions constitute evidence contrary to a claim of adverse possession, but are not conclusive, and must be weighed along with all other evidence of adverse possession. *Cargill v. Buie*, 343 S.W.2d 746, 749 (Tex.Civ.App.-Texarkana 1960, writ ref'd n.r.e.) (ratification agreement between adjoining landowner and oil company). We see no reason to deviate from our prior holding. Therefore, the recital is evidence contrary to adverse possession, but is not conclusive. The recital only creates a fact issue and does not, as a matter of law, defeat the Justisses' claim of adverse possession.

*Evidence Sufficient to Support the Justisses' Adverse Possession Claim*

■ In the alternative, Kinder Morgan argues the evidence is insufficient to prove the Justisses adversely possessed the railroad tract even if the recitations are not admissions. Kinder Morgan contends the evidence is insufficient to establish that the Justisses continuously cultivated, used, or enjoyed the disputed portions of the railroad tract.

The Justisses testified to considerable use of the property. Shortly after the railroad removed the tracks, the Justisses built permanent fences enclosing the portion of the railroad tract adjoining their property and have maintained the fences for over twenty-five years. Since fencing the property, the Justisses have grazed cattle on the property. After the railroad removed the tracks and crossties, the railroad never maintained the property again. The Justisses have maintained the property since that time, and, in addition to grazing cattle on it, have dug at least one stock pond on the property. The Justisses rebuilt and have maintained the levee originally constructed by the railroad. The Justisses hired contractors to do bulldozer work on the levee, and sprigged the ground and planted Bermuda grass. The Justisses filled in a slough[4] on the property and cut an emergency spillway.

Joe Don Mashburn, a neighbor of the Justisses, testified the Justisses had used bulldozers to repair the levee, had installed pipe drops, drainage, and a drop structure. Mashburn testified it "seemed like every year [Justiss] would be doing something to work on that levee." In addition, Mashburn testified the Justisses had cleared timber on the property.

■ The fencing of land has long been recognized as visible appropriation. *Stafford v. Jackson*, 687 S.W.2d 784, 787 (Tex. App.-Houston [14th Dist.] 1985, no writ); *Mixon v. Clark*, 518 S.W.2d 402 (Tex.Civ. App.-Tyler 1974, writ ref'd n.r.e.); *Peveto v. Herring*, 198 S.W.2d 921 (Tex.Civ.App.-

---

4. A slough is an "area of soft muddy ground" or "swamplike region." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1800 (unabridged 2d ed.1987).

Beaumont 1946, no writ). The Justisses presented evidence they had fenced the railroad tract, maintained the fences and the levee, and grazed cattle on the tract for approximately twenty-five years.[5] There is more than a scintilla of evidence of adverse possession.

■ Further, even if Kinder Morgan had preserved factual sufficiency, the great weight and preponderance of the evidence does not indicate that the jury's conclusion is clearly wrong or manifestly unjust. Kinder Morgan alleges three specific actions the Justisses should have taken if their claim was exclusive and hostile. Specifically, Kinder Morgan claims the Justisses failed to require the surveyor who prepared the Federal Loan Bank survey in 1983 to correct his survey plat and field notes, failed to file an affidavit in the Lamar County real property records asserting ownership of the railroad tract, and failed to seek to include the railroad tract in the Farm Services Agency support program. While such actions would have been consistent with a claim of ownership, the Justisses were not required to take these actions in order to perfect their claim of adverse possession.

■ Kinder Morgan also contends the fact that cattle were rotated on the railroad tract defeats the Justisses' claim. When a person in possession of land is shown to have used and enjoyed it as an owner of land usually does, the natural inference is that possession was taken and held for such person as owner and that is, therefore, inconsistent with and hostile to the claim of another. *Whittle v. Johnston,* 392 S.W.2d 867 (Tex.Civ.App.-Texarkana 1965, writ ref'd n.r.e.). The jury was entitled to conclude an owner of a strip of property such as the railroad tract would ordinarily rotate cattle on the property.

Last, Kinder Morgan contends the Justisses' adverse possession claim fails because they did not correct the recitations in a survey at the Federal Loan Bank. As discussed above, such recitations do not, as a matter of law, defeat an adverse possession claim. Considering the evidence in a neutral light, the jury's conclusion that the recital was not a recognition of title is not so against the great weight and preponderance of the evidence as to be manifestly unjust or clearly wrong.

There is more than a scintilla of evidence of each element of adverse possession. Therefore, the evidence is legally sufficient. Even if error had been preserved for our review, the evidence is factually sufficient. Although the recitals are evidence contrary to the Justisses' claim of exclusive, hostile, and continuous possession, the evidence is sufficient to support the jury's conclusion the recitals were not a recognition of title when the recitals are considered with the other evidence of adverse possession. The jury's conclusion that the Justisses own the railroad tract by virtue of adverse possession is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

*Evidence Sufficient to Support the Alspaughs' Adverse Possession Claim*

■ Kinder Morgan contends the evidence is legally and factually insufficient to prove the Alspaughs adversely possessed the railroad tract because the evidence is insufficient to establish that the Alspaughs continuously cultivated, used, or enjoyed the disputed portions of the railroad tract.

---

5. We note that, when land has been used for grazing, the claimant must show he or she constructed a sturdy enclosure that demonstrates that the land is designedly enclosed and shows that the claimant is asserting a claim hostile to the true owners. *See Butler v. Hanson,* 455 S.W.2d 942, 945–46 (Tex.1970).

The Alspaughs presented considerable evidence of actual, visible, hostile, notorious, and exclusive use of the property for approximately twenty-five years. Soon after the railroad removed its tracks and crossties, the Alspaughs fenced in the portion of the railroad tract adjoining their property. Since that time, the Alspaughs have maintained the fences. For a considerable number of years, they planted crops, usually grain sorghum, on the railroad tract and would let their cattle graze on the stalks after the fields were harvested. Their cattle would use the portion of the property with trees for shelter. The Alspaughs maintained a trail from the railroad tract, which they used to access their other pastures. The Alspaughs also cultivated grass on a portion of the railroad tract. Thomas Alspaugh testified he has had cattle constantly on the railroad tract since he fenced the property. In places, the Alspaughs removed gravel from the property to promote the growth of grass. The Alspaughs have maintained the property and claimed it as their own since the railroad removed the tracks and crossties. More than a scintilla of evidence exists for each element of adverse possession.

■ Kinder Morgan alleges there are four specific actions the Alspaughs failed to take which defeats their claim of adverse possession. It claims the Alspaughs should have paid taxes on the property, filed an affidavit in the Lamar County real property records asserting ownership of the railroad tract, explicitly state to someone that they were claiming ownership of part of the railroad tract, and included the railroad tract in the Farm Services Agency support program.

■ Although the payment of taxes can be evidence of a claim of ownership,[6] adverse possession does not require a deed or the payment of taxes unless required by the relevant statute. *See Gotoskey v. Grawunder*, 158 S.W. 249, 251 (Tex.Civ.App.-Galveston 1913, no writ). Thomas Alspaugh testified he did not include the railroad tract in the Farm Service Agency support program because the agency required a deed and the property did not qualify since it had not been historically crop land. Adverse possession, though, does not require the Alspaughs to undertake every possible method of asserting ownership.

■ Further, Kinder Morgan contends the evidence shows, at best, only intermittent use of the property. Thomas testified, according to Kinder Morgan, that he rotated cattle between pastures and "had not grown crops on the property." The record shows, however, that Thomas testified he never grew crops on the *southern* portion of the railroad tract, but testified to extensive use of the *northern* portion of the railroad tract for growing sorghum and wheat. Further, he testified that the portion of the railroad tract not used for crops was used to graze cattle and as shelter for the cattle. Although Thomas testified he would rotate his cattle between pastures, he also testified that cattle were always on at least part of the property.

■ Adverse possession only requires a claimant to use the property in the same manner an ordinary owner would use the property. *Whittle*, 392 S.W.2d at 867. The jury's conclusion the Alspaughs owned the railroad tract by virtue of adverse possession is not so contrary to the great weight and preponderance of the evidence

---

**6.** Some courts have held that payment of taxes is an assertion of ownership. *See Tex–Wis Co. v. Johnson*, 534 S.W.2d 895, 901 (Tex. 1976); *Achille v. Baird*, 361 S.W.2d 439, 444 (Tex.Civ.App.-Houston 1962, writ ref'd n.r.e.). *But see McDougall v. McDougall*, 316 S.W.2d 295, 299 (Tex.Civ.App.-Eastland 1958, writ ref'd n.r.e.) (fact issue).

as to be manifestly unjust or clearly wrong. The evidence is legally and factually sufficient.

ACTUAL DAMAGES

■ Kinder Morgan also challenges the sufficiency of the evidence concerning the actual damages awarded the Justisses and the Alspaughs. Although the jury awarded larger damages than requested in oral argument, a jury may award more damages than requested if there is evidence supporting the higher award.[7] See City of Fort Worth v. Zimlich, 29 S.W.3d 62 (Tex.2000). The awards for the condemnation of the easement and for damages to the Justisses' and the Alspaughs' adjacent properties are supported by sufficient evidence. However, the evidence is insufficient to support the award for loss of use.

Evidence Sufficient to Support Award to Justisses for Condemnation

■ First, Kinder Morgan contends the evidence is legally and factually insufficient concerning the award for condemnation of the easement. Kinder Morgan claims the evidence supports, at the most, damages in the amount of $3,347.00.

William Justiss testified that, because of the importance of the railroad tract to prevent his property from flooding, it was worth between $2,000.00 and $3,000.00 per acre. Kinder Morgan contends William's testimony amounts to no evidence because

he failed to testify as to a fair market value for the property after the installation of the pipeline. However, William testified the property had no value in its current condition. Because approximately ten acres were condemned by Kinder Morgan,[8] the evidence supported the jury's award of $25,000.00. There is more than a scintilla of evidence supporting the jury's verdict.

■ Kinder Morgan argues the only competent evidence on the value of the railroad tract was the testimony of Murphy. Kinder Morgan contends that neither William nor Thomas were competent to testify concerning the value of their respective tracts of land. A property owner, though, can provide opinion testimony regarding diminution in market value resulting from damage to such owner's land. Waste Disposal Ctr., Inc. v. Larson, 74 S.W.3d 578, 583 (Tex.App.-Corpus Christi 2002, pet. denied). William testified he was familiar with the market value of farm and ranch land. In addition, William was on the State Water Planning Committee, was a director of the Texas Farm Bureau, and was a director of Agriland, a cooperative of farmers which makes loans for farm and ranch land. As a director in these organizations, William had considerable exposure to current market prices of farm and ranch land. Thomas testified he had farmed and ranched his entire life and had familiarized himself with current market prices before trial. We find that William and Thomas were competent to testify re-

---

7. We note that a trial court may not render judgment for an amount in excess of what the plaintiff requested in his or her last pleading. See Socony–Vacuum Oil Co. v. Aderhold, 150 Tex. 292, 240 S.W.2d 751, 756 (1951); Picon Transp., Inc. v. Pomerantz, 814 S.W.2d 489, 491 (Tex.App.-Dallas 1991, writ denied); Reysa v. Reysa, 521 S.W.2d 746, 748 (Tex.Civ. App.-Texarkana 1975, no writ); see also TEX.R. CIV. P. 47(c). The amounts awarded in this case do not exceed the pleadings.

8. The parties are at odds concerning exactly how much property was condemned. William testified Kinder Morgan took approximately twelve acres of land. On appeal, though, the Justisses argue that whether the amount condemned was 10.9 acres or twelve acres is immaterial. Pat Murphy, Kinder Morgan's expert witness, originally testified 5.77 acres were condemned, but later adjusted the calculation to 10.9 acres.

garding the value of their respective tracts of land.

■ The evidence is also factually sufficient. In calculating damages in a condemnation case, the jury is not bound by expert testimony, but must stay within the evidence when making its determination. *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86 (Tex.App.-El Paso 1995, writ denied). Murphy testified the value of the easement on the Justisses' tract was only $3,347.00.[9] Murphy's calculations were based on a condemnation of only 5.77 acres, even though he later admitted the area condemned was actually 10.9 acres. William testified that approximately twelve acres were condemned.

Even if the great weight and preponderance of the evidence requires a conclusion that the property still has some value, the jury's award of $25,000.00 is within the range of the testimony. Murphy testified the property had lost eighty percent of its value. Assuming the jury believed William that the property was worth $3,000.00 per acre, but believed Murphy that the property still retained twenty percent of its value, the jury could have awarded up to $26,160.00. The evidence is legally and factually sufficient to support an award of $25,000.00 to compensate the Justisses for the land that was condemned.

*Evidence Sufficient to Support the Award to Alspaughs for Condemnation*

■ In addition, Kinder Morgan argues the evidence is legally and factually insufficient to support the jury's award to the Alspaughs. Although Thomas testified the easement reduced the value of his property by about $250.00 per acre for 9.8 acres, the jury awarded him $10,000.00. Murphy testified that the easement reduced the value of the property by $2,940.00. Murphy testified that the property was worth only around $750.00 per acre and that the easement reduced the value of the railroad tract by eighty percent. Murphy based his calculations on only 4.9 acres being condemned. However, the amount of land actually condemned was disputed at trial and Murphy later recalculated the land condemned as 9.8 acres. The record contains evidence that nearby property had been sold for $1,100.00 per acre. Kinder Morgan paid $1,000.00 per acre for a deed without warranty to the railroad tract.

■ At the most, the evidence is in conflict. This Court is not a fact-finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact. *Ellis*, 971 S.W.2d at 407; *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex.1986) (findings of fact are exclusive province of the jury or trial court). Where there is conflicting evidence, the fact-finder's verdict on such matters is generally regarded as conclusive. *Edmunds v. Sanders*, 2 S.W.3d 697, 703 (Tex.App.-El Paso 1999, pet. denied); *see Pool*, 715 S.W.2d at 633.

■ The jury is not required to determine the amount of damages with mathematical precision. *State v. Buckner Constr. Co.*, 704 S.W.2d 837, 843 (Tex. App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Nueces Trust Co. v. White*, 564 S.W.2d 798, 804 (Tex.Civ.App.-Corpus

---

9. Murphy valued the loss of the easement at $580.00 per acre, even though Kinder Morgan paid $1,000.00 per acre for its deed without warranty. Further, Murphy admitted that other property in the area had sold for more than $1,000.00 per acre and testified that the Justisses had some of the best land in the area as long as water could be kept off of it. Murphy testified the railroad tract had lost eighty percent of its value due to the condemnation of the easement. In addition, Murphy testified he did not believe the loss of trees, that served as a wind break, would affect the value of the property.

Christi 1978, no writ); *see Hindman v. Tex. Lime Co.*, 157 Tex. 592, 305 S.W.2d 947, 953 (1957). Although the record does not contain evidence that exactly matches the jury's award, the record contains evidence that the value of the easement is approximately $10,000.00. A verdict will be set aside on appeal only where the record clearly indicates that the award was based on passion, prejudice, or improper motive, or is so excessive as to shock the conscience. *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 247–48 (Tex. App.-Texarkana 2005, no pet.); *Transit Mgmt. Co. of Laredo v. Sanchez*, 886 S.W.2d 823, 826 (Tex.App.-San Antonio 1994, no writ). Because there was evidence that approximately ten acres of land were condemned, an award of $10,000.00 is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong, to be manifestly unjust, or to shock the conscience. The evidence is legally and factually sufficient.

*Evidence Insufficient to Support Award for Loss of Use*

Although the jury awarded $100,000.00 to the Justisses and $50,000.00 to the Alspaughs as loss of use damages, the trial court suggested a remittitur, reducing the award to $10,000.00 for each couple. Kinder Morgan contends the evidence is factually insufficient to support the reduced award. We agree.

The Justisses contend the trial court's award is supported by sufficient evidence. William testified the effect on his cattle and his own extra work due to the loss of use of the property was worth approximately $2,000.00. The Justisses also contend the jury could consider Murphy's estimation that it would take $4,800.00 to $5,000.00 in gravel and $500.00 in equipment to reconstruct a hay storage unit on the property. In addition, the Justisses

contend the jury could award additional damages for the cost to replace fences, cut trees left leaning, and other damages. Thomas testified the loss of the railroad tract caused him extra work worth at least $1,000.00. He also testified he had trouble moving cattle from one pasture to another, was unable to use the railroad tract for grazing, and incurred other damages.

The rental value of a property is the ordinary method of calculating damages for a temporary loss of use of property. *Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture*, 50 S.W.3d 531, 545 (Tex. App.-El Paso 2001, no pet.). Neither the Justisses nor the Alspaughs testified concerning the rental value of the railroad tract. However, when a property is not rentable, the owner may resort to proving the actual worth of use. *Sw. Bell Tel. Co. v. Hamil*, 116 S.W.3d 798 (Tex.App.-Fort Worth 2003, no pet.). The jury was presented testimony that the property could not be rented. However, not all of the damages relied on by the Justisses and the Alspaughs relate to loss of use.

The cost of reconstructing the hay storage unit relates to cost of restoration, rather than loss of use. The Justisses and the Alspaughs contend the cost of restoring the land can also be recovered as loss of use damages. In support of this proposition, the Justisses and the Alspaughs cite *Carter v. Barclay*, 476 S.W.2d 909 (Tex.Civ.App.-Amarillo 1972, no writ). Although *Barclay* concerned temporary injury to realty and allowed recovery for the cost of restoration, *Barclay* does not stand for the proposition that cost of restoration can be recovered under a question specific to loss of use. Although both loss of use and cost of restoration are types of damages resulting from a temporary injury to property, the jury in this case was not instructed concerning temporary injury to property in general. The question was

limited to loss of use of the property; the jury was never instructed or asked to award damages for cost of restoration. Damages attributable to one category of damages cannot be awarded under a different category.[10] Thus, the cost to restore the railroad tract to its prior condition cannot be considered in determining whether there is sufficient evidence of the loss of use damages.

While there may be evidence of additional loss of use damages not included in the $2,000.00 testified to by William and the $1,000.00 testified to by Thomas, the Justisses and the Alspaughs have not directed us to where any values were assigned to these additional damages. Without any evidence concerning the value of these additional damages, the trial court's award of $10,000.00 to the Justisses and to the Alspaughs, respectively, is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust and clearly wrong. The cost of restoration of the property cannot be awarded on a question specific to loss of use. The evidence is factually insufficient.

*Evidence Sufficient Concerning Damages to Adjacent Property*

 Kinder Morgan challenges the jury's award of $60,000.00 to the Justisses and $50,000.00 to the Alspaughs for damages to their respective property, other than the railroad tract. These damages were based on the loss of the levee (for the Justisses), loss of wooded area for their cattle to take shelter and calve, and other losses affecting the value of the Justisses' and the Alspaughs' adjoining properties.

William testified the levee was extremely important to his property to prevent flooding. Thus, the loss of the levee substantially affected the value of his property. Both William and Thomas testified trees were important to cattle operations because the cattle needed the shelter the trees provided. They further testified the loss of trees would reduce the value of their ranches. Thomas testified the railroad tract was the only wooded area on his property. William testified the pipeline reduced the value of 300 acres of his remaining property by $200.00 per acre. Thus, the award of $60,000.00 to the Justisses is supported by the evidence. Thomas testified the value of his remaining property was reduced by $250.00 per acre. Since his remaining property consisted of 200 acres, the evidence supported an award of $50,000.00 to the Alspaughs. There is more than a scintilla of evidence to support the jury's awards.[11]

10. We note the Texas Supreme Court has explained that, where several damage categories overlap, a reviewing court must consider evidence unique to each category. *Jackson,* 116 S.W.3d at 775. If that evidence is factually insufficient, based on the evidence unique to one category, then the court must consider all the overlapping evidence and the evidence unique to each category, in conducting its review of the sufficiency of the evidence to support the jury's award. *Id.* at 775–76. While the damages resulting from the additional time expended by the Justisses and the Alspaughs may overlap, the damages relating to gravel and equipment to restore the hay lot are unique to the cost of restoration category and there is no overlap concerning these damages with loss of use.

11. We note Kinder Morgan argues this testimony should be disregarded for a lack of competent foundation. William testified he based this value on the difference between Murphy's estimated value of the property and the appraisal conducted when he granted the Federal Wetlands Reserve Program a wetlands easement. Kinder Morgan argues, because William based his reduction on a wetlands easement appraisal rather than a fee simple appraisal, the testimony is incompetent. William, though, testified there is little or no difference between the value of a wetlands easement and the value of a fee simple. William also testified that neighboring land, which was not fertile, had sold for $933.00 an acre, which was considerably more than the appraisal Murphy had done on the land.

Kinder Morgan contends that, based on Murphy's testimony, the awards should be reduced to $3,053.00 for the Justisses and $735.00 for the Alspaughs. Murphy testified the pipeline would have no affect on the value of the surrounding area. Kinder Morgan relies on Murphy's testimony that the Alspaughs were entitled to $735.00 for reseeding the Alspaughs' easement area. Murphy also testified the Justisses were entitled to $3,053.00 for the loss of the hay lot and for reseeding. The jury was entitled to resolve the conflicting testimony in favor of the Justisses and the Alspaughs. The jury's award is not so against the great weight and preponderance of the evidence that it is clearly wrong or manifestly unjust.

## EXEMPLARY DAMAGES

■■■■ Kinder Morgan contends the trial court erred in awarding exemplary damages because the Justisses and the Alspaughs failed to present clear and convincing evidence that Kinder Morgan acted with malice.[12] Exemplary damages may only be awarded on proof by clear and convincing evidence of fraud, malice, or a "wilful act or omission or gross neglect in wrongful death actions...." *See* Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, 1995 Tex. Gen. Laws 108, 110 (amended 2003) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 (Vernon Supp.2006)). According to Kinder Morgan, the evidence is legally insufficient[13] for a rational juror to have formed a firm belief that Kinder Morgan acted with malice. We agree.

■■■■ Malice differs from ordinary negligence because it requires extreme risk and a conscious indifference to that risk. *See Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 21 (Tex.1994). Former Section 41.001(7) of the Texas Civil Practice and Remedies Code, which dealt with exemplary damages, defined malice as:

> an act or omission ... which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and ... of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

---

While the fact that William based his estimation on a wetlands easement may affect the weight of William's testimony, it does not make the testimony incompetent. Kinder Morgan also argues that, because Thomas did not base his testimony on market data, his testimony was incompetent. For the reasons discussed above, we hold Thomas was competent to testify.

12. In the alternative, Kinder Morgan contends exemplary damages are inappropriate because there is no evidence it authorized the malice, maliciously hired an unfit agent, or acted with malice through a vice principal. A corporation is liable for exemplary damages only if it 1) authorizes or ratifies an agent's malice; 2) maliciously hires an unfit agent; or 3) acts with malice through a vice principal. *Qwest Int'l Commc'n, Inc. v. AT & T Corp.,* 167 S.W.3d 324, 326 (Tex.2005). "Vice principal" encompasses: 1) corporate officers; 2) those who have authority to employ, direct, and discharge servants of the master; 3) those engaged in the performance of nondelegable or absolute duties of the master; and 4) those to whom the master has confided the management of the whole or a department or a division of the business. *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 922 (Tex. 1998). The evidence clearly established that the complained-of actions in this case were committed by a vice principal.

13. Kinder Morgan also challenges the factual sufficiency of the evidence in support of the jury's finding of malice. As discussed above, Kinder Morgan failed to preserve their factual sufficiency point of error by failing to file a motion for new trial.

Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, 1995 Tex. Gen. Laws 108, 109 (amended 2003) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 41.001 (Vernon Supp. 2006)).[14] Malice requires that the defendant's conduct involved an objective extreme risk of harm and that the defendant had a subjective "actual awareness" of an extreme risk created by the conduct. *Brown & Root, Inc. v. Moore*, 92 S.W.3d 848, 850–51 (Tex.App.-Texarkana 2002, pet. denied). An objective extreme degree of risk is a risk "which is not a remote possibility of injury or even a probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Id.* at 851; *Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 374 (Tex.2004). A subjective "actual awareness" requires evidence that the defendant knew about the peril, but its acts or omissions demonstrated it did not care. *Moore*, 92 S.W.3d at 851. Circumstantial evidence may be sufficient to prove either prong of malice. *Id.*

 The "extreme degree of risk" prong of malice, sufficient to support exemplary damages, is a function of the magnitude of injury and the probability of injury. *KPH Consolidation, Inc. v. Romero*, 102 S.W.3d 135, 144 (Tex.App.-Houston [14th Dist.] 2003), *aff'd*, 166 S.W.3d 212 (Tex.2005); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 132 S.W.3d 671, 681–82 (Tex.App.-Dallas 2004, pet. grant-

ed). The harm to be anticipated from the conduct must be extraordinary harm such as "death, grievous physical injury, or financial ruin." *Celanese Ltd. v. Chem. Waste Mgmt., Inc.*, 75 S.W.3d 593, 600 (Tex.App.-Texarkana 2002, pet. denied); *see Moriel*, 879 S.W.2d at 24.

 When considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the jury's finding, taking into account contrary undisputed facts, to determine whether reasonable jurors could have formed a firm belief or conviction regarding malice. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 618 n. 15 (Tex.2004); *see Qwest Int'l Commc'n*, 167 S.W.3d at 326. "To give appropriate deference to the fact-finder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so." *Garza*, 164 S.W.3d at 627. A court should disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *Id.*

 The Justisses and the Alspaughs contend malice can be implied from the circumstances of this case.[15] Malice may

14. We note that the definition of malice in Section 41.001 was amended during the 2003 legislative session. However, because this action was filed before the effective dates of the 2003 amendments, the former version of Section 41.001(7) applies to this case. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 899. Under the current statute, the definition of "gross negligence" mirrors the definition of malice contained in subsection (B) of former Section 41.001(7). *Compare* Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, 1995 Tex. Gen. Laws 108, 109 *with* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001 (Vernon Supp.2006); *see also*

*Moriel*, 879 S.W.2d at 22 (gross negligence under the common law).

15. Kinder Morgan cites *Gardner v. Jones*, 570 S.W.2d 198, 201 (Tex.Civ.App.-Houston [1st Dist.] 1978, no writ), for the proposition that an award of exemplary damages is not appropriate where it appears the defendant acted in good faith, without wrongful intention, or in belief it was exercising its rights. There is considerable evidence Kinder Morgan did not act with a subjective awareness of an extreme risk. Kinder Morgan filed a motion for a temporary injunction and a declaratory judgment action to determine ownership of the

be implied from the knowing conversion of another's property when the defendant knew or should have known it had no legal right to the property. *First Nat'l Bank of McAllen v. Brown*, 644 S.W.2d 808, 810 (Tex.App.-Corpus Christi 1982, writ ref'd n.r.e.). However, there is no clear and convincing evidence that the alleged conversion here was knowing. At best, the evidence establishes that Kinder Morgan knew there was a dispute concerning who owned the property. Under the evidence presented in this case, malice cannot be implied.

■ In the alternative, the Justisses and the Alspaughs contend a rational juror could have formed a firm belief that Kinder Morgan acted with malice. According to the Justisses and the Alspaughs, the damages they sustained, the fact that Kinder Morgan knew they were claiming the railroad tract, and the fact that Kinder Morgan only obtained a deed without warranty are sufficient to prove there was an extreme risk of serious injury. Further, the Justisses and the Alspaughs allege Kinder Morgan's rejection of an alternative route for its pipeline, and its failure to investigate the Justisses' and Alspaughs' claims, constitute sufficient evidence Kinder Morgan was subjectively aware of the extreme risk and acted with conscious indifference.

While constructing the pipeline, Kinder Morgan destroyed numerous trees, which caused the loss of several calves, and destroyed a levee which protected the Justisses' property from flooding. William testified he lost over 600 trees as a result of Kinder Morgan's actions. Many of these trees were not on the railroad tract.

William explained that the levee maintained by the railroad—and subsequently maintained by him—for over twenty-five years was necessary to keep over 300 acres of his remaining land from flooding. Thomas testified that Kinder Morgan destroyed approximately 300 trees on the portion of the railroad tract he had adversely possessed. Thomas further testified the railroad tract was the only wooded area on his land where his cattle could take shelter, and testified several calves died due to the loss of the wooded area.

The Justisses argue there is a substantial likelihood of encroachments when property that has not been used for decades is purchased by a deed without warranty. As evidenced by literature from the construction of another pipeline project, Kinder Morgan knew there was a risk of adverse possession claims when constructing property on land that had not been used in decades. Harry Gollier, a corporate representative of Kinder Morgan, testified that Kinder Morgan was aware Union Pacific was not warranting against any adverse possession claims.

In addition, the Justisses and the Alspaughs contend this case presents similar facts to the Corpus Christi Court of Appeals' decision in *Houston Lighting & Power Co. v. Sue*, 644 S.W.2d 835 (Tex. App.-Corpus Christi 1982, writ ref'd n.r.e.). In *Sue*, the Corpus Christi court affirmed a jury's conclusion that HL & P acted with malice. *Id.* While constructing a cooling pond for a nearby power plant, HL & P constructed a temporary road through an adjoining tract of land. *Id.* Although HL & P had begun negotiations to purchase an easement across the property, there was evidence that, at the time construction be-

railroad tract. While the temporary injunction and declaratory judgment action are evidence Kinder Morgan was acting in good faith, we are confined to considering only the evidence in favor of the jury's verdict in deter-

mining if the evidence is legally sufficient. As discussed above, Kinder Morgan failed to preserve factual sufficiency of the exemplary damages for our review.

gan, HL & P knew it had no rights to the property. *Id.* During HL & P's use of the property, cattle belonging to the lessee of the property escaped from the property. *Id.* Holding that the jury was entitled to conclude HL & P used the land without permission and with conscious indifference to the lessee's cattle operation, the court affirmed the jury's finding of malice. *Id.*

We believe *Sue* is distinguishable from the facts of this case. In *Sue,* the court held that the jury was entitled to conclude HL & P knew it had no rights to the property in question. *Id.* at 841. Unlike *Sue,* the evidence in this case establishes, at most, that Kinder Morgan knew there was a dispute over the ownership of the property. In addition, the Texas Supreme Court has adopted, since the decision in *Sue,* a heightened standard of review for exemplary damages. *See Garza,* 164 S.W.3d at 618 n. 12.

■ The Justisses and the Alspaughs presented no clear and convincing evidence that any of these actions created an extreme risk of extraordinary harm. Although the evidence supports a conclusion there was some risk of injury to the Justisses and the Alspaughs, there is not clear and convincing evidence of an extreme risk. Exemplary damages are available for the purpose of punishing a defendant for outrageous, malicious, or otherwise morally culpable conduct. *Ellis County State Bank v. Keever,* 936 S.W.2d 683 (Tex.App.-Dallas 1996, no writ). The mere fact there was a risk of the occurrence of some injury is not clear and convincing evidence there was an extreme risk of extraordinary harm. Even when viewed in a light most favorable to the jury's verdict, the evidence is insufficient for a rational juror to form a firm belief there was an extreme risk of extraordinary harm. Because there is insufficient evidence of an extreme risk, we decline to decide whether the evidence that Kinder Morgan acted with conscious indifference to the extreme risk is sufficient.[16] The evidence is legally insufficient to support the jury's award of exemplary damages.

## CONCLUSION

The recitals contained in a deed of trust relating to the Justisses' adjoining proper-

---

16. The Justisses and the Alspaughs reference the following evidence in support of their claim that Kinder Morgan was aware of the extreme risk and acted with conscious indifference. Kinder Morgan failed to investigate the Justisses' and the Alspaughs' claims to the property, even though Kinder Morgan knew the Justisses and the Alspaughs were claiming the property. James Rogers, attorney for the Justisses and the Alspaughs, notified Kinder Morgan before the construction of the pipeline that his clients owned the railroad tract. Although this letter did not state that the Justisses and the Alspaughs owned the land by virtue of adverse possession, this letter was hand delivered to Kinder Morgan and Kinder Morgan responded to the claim. Clearly, Kinder Morgan had notice the ownership of the land was in dispute. Rogers also testified he had mailed, before construction of the pipeline, another letter to Kinder Morgan claiming ownership of the railroad tract by virtue of adverse possession. Gollier, Kinder Morgan's corporate representative, testified that, to his knowledge, Kinder Morgan had not investigated the Justisses' or the Alspaughs' claims. Gollier acknowledged he knew there was a possibility of encroachments on the property, but did not investigate any possibilities. In addition, the Justisses and the Alspaughs introduced evidence that Kinder Morgan had rejected an alternative route for its pipeline. Because of the importance of the levee to his property, William had offered to give Kinder Morgan an easement across land adjoining the railroad tract if Kinder Morgan would leave the railroad tract untouched. Kinder Morgan would have had only two trees to cut down, and the route of the pipeline would have been straighter and less obstructed. When asked why Kinder Morgan chose to curve through the levee rather than proceed through the straighter and less obstructed route offered by William, Gollier's only response was: "[w]e purchased the property."

ty is not an acknowledgment, as a matter of law, of title in another. We reject Kinder Morgan's argument that the evidence of adverse possession is legally insufficient. Further, the evidence of adverse possession is factually sufficient, even if Kinder Morgan had preserved error. The evidence is legally and factually sufficient for the damages relating to the condemnation and the damages to adjoining property. However, the evidence concerning the jury's award for loss of use damages is factually insufficient, and the evidence supporting exemplary damages is legally insufficient.

Therefore, conditioned on the Justisses filing, within fifteen days from the date of our opinion, a remittitur of $8,000.00 from the damages awarded by the trial court, we modify the trial court's judgment to reflect an award to them, supported by the testimony of William Justiss, of $2,000.00 in damages for loss of use. Further, conditioned on the Alspaughs filing, within fifteen days from the date of our opinion, a remittitur of $9,000.00 from the damages awarded by the trial court, we modify the trial court's judgment to reflect an award to them, supported by the testimony of Thomas Alspaugh, of $1,000.00 in damages for loss of use.

Because the evidence is legally insufficient to support the award of exemplary damages to either the Justisses or to the Alspaughs, we modify the trial court's judgment to delete such damages. If the above remittiturs are not filed, the judgment is reversed and the cause remanded for a new trial. Otherwise, the judgment, as modified, is affirmed.