Ruben N. JARRIN, Appellant,

v.

SAM WHITE OLDSMOBILE CO., a/k/a Sam White Oldstown U.S.A., and Austin Rover Cars of North America, d/b/a Sterling Motor Cars, Appellees.

No. 01–94–01023–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 2, 1996.

Rehearing Denied May 31, 1996.

Jerome K. Wade, Houston, for Appellant.

Deborah J. Bullion, N. Terry Adams, Jr., Marvin E. Chernosky, Houston, for Appellees.

Before WILSON, COHEN and ANDELL, JJ.

## OPINION

WILSON, Justice.

Appellant, Ruben N. Jarrin, appeals from the jury verdict returned and judgment rendered in favor of appellees Sam White Oldsmobile Co., a/k/a Sam White Oldstown U.S.A. (Sam White) and Austin Rover Cars of North America, d/b/a Sterling Motor Cars (Sterling). In three points of error, Jarrin argues the trial court erred (1) by rendering judgment on the verdict in favor of Sam White and Sterling; (2) by awarding pre- and post-judgment interest without supporting evidence; and (3) by excluding Jarrin's requested instructions from the jury charge. We affirm.

### Summary of facts

Jarrin testified he purchased a new 1987 model 825s Sterling automobile from Sam White on June 11, 1987. Jarrin paid $4,000 as a down payment on the car and signed a financing agreement for the balance of the $19,400 purchase price. The retail installment contract signed by Jarrin on June 11th lists the car's vehicle identification number as SAXXS44B1HM110692. Jarrin testified he picked up the car on June 14, 1987 after Sam White called and informed him the car was ready. When he picked up the car, Jarrin signed an odometer mileage statement that incorrectly lists the vehicle identification number of the car Jarrin received as SAXXS44B4HM14509.

Bruce Baker, the former general sales manager for Sam White, testified Sam White did not have the car in the color blue Jarrin requested in its stock, so the dealership traded a white car for a blue one from a dealership in Austin. Baker stated the odometer statement signed by Jarrin did not list the mileage and vehicle identification number of the car Sam White sold to Jarrin, but mistakenly described the mileage and vehicle identification number of the car Sam White had sent to Austin. The mistake was discovered by Sam White a couple of days after Jarrin picked up his car, and the dealership prepared a corrected odometer statement, called Jarrin, and asked him to sign the corrected statement. Jarrin did not do so.[1] Jarrin admitted he noticed a discrepancy in the odometer statement two or three days after he picked up the car, but did not notify Sam White of the difference at the time.

On June 25, 1987, Jarrin and his two sons took the car on an estimated 6,000 mile vacation to St. Louis, Chicago, Niagara Falls, Boston, New York, Washington D.C., and New Orleans. Jarrin stated that during the trip the car's trunk latch broke, which he had repaired in Chicago. He also testified of problems with the transmission in Boston and New York, and with the air conditioner in Washington D.C. By the time they reached New Orleans, the air conditioner had broken down completely, and he decided to return to Houston.

Jarrin testified he took the car to Sam White on August 6, 1987 for repairs to the

---

1. After Baker testified to these events, counsel for Jarrin questioned Baker on voir dire and objected to this testimony. The objection was sustained. However, no instruction to disregard or motion to strike this testimony was requested or given.

air conditioner and a crack in the windshield. Jarrin stated he again returned the car to Sam White for repairs to the transmission and air conditioner on August 20th and 24th. Sam White provided a loaner car to Jarrin when he brought his car in for repairs on the 24th. On September 8, 1987, Jarrin exchanged the loaner car for a free rental car while his car remained at the dealership.

Jarrin contacted an attorney while his car was being repaired, and on examination of the documents relating to the sale, again noticed the difference in the vehicle identification numbers. He testified that when Sam White called him on September 21, 1987, and informed him his car was ready, he told Sam White he would not pick up his car because he thought they had cheated him. At that time, Jarrin had made four monthly payments on the car, totalling $1,711.36.

Jarrin stated Danny Jackson from Sam White called him in October 1987 and told him to pick up the car or his credit was going to be ruined. Jarrin added that he has been unable to obtain credit and believes it is a result of his dispute with Sam White. Jarrin also said he has suffered emotional distress, upset stomach, headaches, inability to concentrate, and difficulty in sleeping. Jarrin subsequently filed suit against Sam White and Sterling alleging violation of odometer statutes and asserting causes of action for fraud, breach of contract, civil conspiracy, as well as claims under the Deceptive Trade Practices—Consumer Protection Act (DTPA).[2] He alleged, among other things, the vehicle delivered to him was not the vehicle he had examined and contracted to purchase.

Sterling filed a general denial of Jarrin's claims requesting costs and attorneys' fees. Sam White also filed a general denial. In addition, Sam White filed a counterclaim, as assignee of Texas Commerce Bank, N.A., seeking to collect the $4,801.38 deficiency

balance due under the retail installment contract for the purchase of the car, along with attorneys' fees and costs.

The jury reached a verdict in favor of Sam White and Sterling on all causes of action asserted by Jarrin. In its answer to question number 14, the jury found Sam White did not provide Jarrin with a written disclosure of the odometer reading for the automobile with vehicle identification number SAXXS44B1HM110692, the automobile he purchased. In its answer to question number 15, the jury found Jarrin had not complied with the retail installment contract. The jury awarded Sam White $2,831.38 as the amount owed by Jarrin for the deficiency after Sam White sold the car at foreclosure, and for costs and sales commissions. The jury also awarded $1,500 in attorneys' fees. The trial court rendered a final judgment on the verdict and ordered an additional $919.21 as pre-judgment interest and set post-judgment interest at 10 percent per year.

**Odometer disclosure statement**

In his first point of error, Jarrin contends the trial court erred in rendering judgment on the verdict for Sam White and Sterling. Jarrin argues the jury's answer to question number 14 requires the trial court to render judgment that he is not liable to Sam White because he was not provided with an odometer statement for the automobile he purchased.

The former Certificate of Title Act provided, in part:

[W]hen a motor vehicle is sold in this state the transferor shall provide to the transferee a written disclosure of the odometer reading at the time of transfer.[3]

. . . .

All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with.[4]

2. Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987 & Supp.1996).

3. Act of May 23, 1989, 71st Leg., R.S., ch. 482, sec. 4, § 33(b), 1989 Tex.Gen.Laws 1654, 1656, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24, 1995 Tex.Gen.Laws 1025, 1871

(current version at Tex.Transp.Code Ann. § 501.072(a) (Vernon 1996)).

4. Certificate of Title Act, 46th Leg., R.S., tit. registration, ch. 4, § 53, 1939 Tex.Gen.Laws 602, 610, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24, 1995 Tex.Gen.Laws 1025,

As noted above, question number 14 asked the jury if Sam White provided Jarrin with a written disclosure of the odometer reading for the Sterling automobile with vehicle identification number SAXXS44B1HM110692, the car Jarrin purchased. The jury found Sam White had not provided Jarrin with a written disclosure of the odometer reading for that automobile.

■ Jarrin's argument raises a question concerning the legal effect of the Certificate of Title Act on his transaction with Sam White to purchase the automobile. The determination of this issue is a question of law. *See Najarian v. David Taylor Cadillac,* 705 S.W.2d 809, 811 (Tex.App.—Houston [1st Dist.] 1986, no writ). In construing a statute, we may consider the object sought to be attained and the consequences of any particular construction. TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988); *City of Dallas v. Cornerstone Bank, N.A.,* 879 S.W.2d 264, 270 (Tex.App.—Dallas 1994, no writ). The legislative intent of the Certificate of Title Act was to lessen and prevent theft of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without disclosure of existing liens, not to prevent sales and transfers of interest in motor vehicles. *Cash v. Lebowitz,* 734 S.W.2d 396, 398 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Najarian,* 705 S.W.2d at 811.

■ The Certificate of Title Act simply requires the seller to provide the buyer with a written disclosure of the odometer reading at the time of transfer. By requiring such statements, the statute forces sellers to defend what they put in writing and eliminates "swearing match" disputes as to what a seller did or did not represent to the buyer as the actual mileage of the vehicle at the time of sale. Jarrin contends that under the Act, if the seller provides an erroneous odometer statement, the sale is void and the original buyer does not have to pay the purchase money lien. The law is to the contrary. Texas law recognizes that even when the sale of a vehicle does not comply with the requirements of the Certificate of Title Act, the sale may still be considered a valid transaction as between the original parties, although the

Act declares that non-compliance renders the sale void. *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co.,* 465 S.W.2d 933, 937 (Tex.1971); *Morey v. Page,* 802 S.W.2d 779, 784 (Tex.App.—Dallas 1990, no writ); *Cash,* 734 S.W.2d at 398; *Najarian,* 705 S.W.2d at 811; *United States v. 1977 Porsche Carrera 911 VIN 9117201924, License No. 459 DWR,* 946 F.2d 30, 34 (5th Cir.1991).

We conclude that the transaction is not void. By our holding, we do not intend to preclude Jarrin or future plaintiffs from suing on any legal theories that may arise from the delivery of a false odometer statement, such as breach of contract and/or DTPA. Rather, it is our determination that delivery of an incorrect odometer statement does not in itself void an otherwise enforceable transaction. Therefore, appellant's first point of error is overruled.

**Award of pre- and post-judgment interest**

In his second point of error, Jarrin asserts the trial court's award of pre- and post-judgment interest to Sam White is not supported by any evidence, findings, or judicial notice.

■ Pre-judgment interest is recoverable as a matter of right when an ascertainable sum of money is determined to have been due and payable at a definite date prior to judgment. *Miner–Dederick Constr. Corp. v. Mid–County Rental Serv., Inc.,* 603 S.W.2d 193, 200 (Tex.1980); *Northwest Mall, Inc. v. Lubri–lon Int'l, Inc.,* 681 S.W.2d 797, 805 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per year shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the 30th day after the time when the sum is due and payable. TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987). The trial court awarded Sam White $919.21 in pre-judgment interest. This figure is reached by calculating six percent interest on the $2,486.03 deficiency owed to Sam White starting from 30 days after the foreclosure sale of the car.

1871 (current version at TEX.TRANSP.CODE ANN. § 501.073 (Vernon 1996)).

Post-judgment interest is recoverable even if the trial court's judgment does not mention it; it is mandated by statute. TEX. REV.CIV.STAT.ANN. art. 5069–1.05 (Vernon Supp.1996); *National Union Fire Ins. Co. v. Wyar*, 821 S.W.2d 291, 297 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Golden v. Murphy*, 611 S.W.2d 914, 916 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ). The statute provides that for judgments based on a contract that does not provide a specified rate of interest, the judgment interest shall be computed by the consumer credit commissioner, and if the commissioner's computed rate is below 10 percent, then the judgment rate is automatically increased to 10 percent. TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 2 (Vernon 1987).

We hold the trial court's award of prejudgment interest was supported by the record and the award of post-judgment interest was mandated by statute; therefore both were proper. Accordingly, we conclude the trial court's award of pre- and post-judgment interest was not error, and we overrule appellant's second point of error.

**Excluded jury instructions**

In his third point of error, Jarrin argues the trial court erred in refusing to include his requested instructions in the jury charge. Jarrin contends his requested instructions should have been included in the jury charge because they were timely dictated into the record. Jarrin did not submit a proposed jury charge or requested instructions in writing.

Either party may request and present to the trial court written questions, definitions, and instructions to be given to the jury. TEX.R.CIV.P. 273. To complain of the trial court's omission of a requested instruction on appeal, a party is obliged to make a written request to the trial court for a substantially correct instruction. TEX.R.CIV.P. 278; *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 637 (Tex.1995); *Mason v. Southern Pac. Transp. Co.*, 892 S.W.2d 115, 117 (Tex.App.—Houston [1st Dist.] 1994, writ requested). If a party does not do so, he waives any error by the trial court in not submitting the requested instruction. *Hartnett v. Hampton Inns, Inc.*, 870 S.W.2d 162, 166 (Tex.App.—San Antonio 1993, writ denied). Dictating a requested instruction to the court reporter is not sufficient to support an appeal based on the trial court's refusal to submit requested material. *Id.* at 165.

Jarrin did not submit his requested instructions to the trial court in writing. Therefore, we conclude he has waived any error on this point, and we overrule his third point of error.

We affirm the judgment of the trial court.