Walter J. SLUSSER, Appellant,

v.

UNION BANKERS INSURANCE COMPANY, Appellee.

No. 11–01–00041–CV.

Court of Appeals of Texas, Eastland.

Feb. 21, 2002.

Rehearing Denied May 9, 2002.

---

**33.** 931 S.W.2d at 255.

John D. Copeland, Johnson & McElroy, Dallas, for appellant.

Lawrence S. Fischman, Robert Cousins, Jr., Glast, Phillips & Murray, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and McCALL, J., and McCLOUD, S.J.[1]

Opinion

TERRY McCALL, Justice.

In December 1999, Walter J. Slusser sued Union Bankers Insurance Company (UBI), his former employer, to recover insurance renewal commissions that Slusser claimed he earned from 1987 through 1994. Although UBI paid him commissions during the period, Slusser claims that UBI paid him lower commissions than were owed. In his sole issue, Slusser contends that the trial court erred in granting summary judgment for UBI on the ground that his action is barred by limitations. We affirm.

### Standard of Review

■ A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). A trial court properly grants summary judgment for a defendant if he establishes all the elements of an affirmative defense. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). Once the movant establishes his right to a summary judgment, the non-movant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979). When reviewing a summary judgment, the appel-

---

1. Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

late court takes as true evidence favorable to the non-movant and indulges every reasonable inference and resolves any doubts in favor of the non-movant. *American Tobacco Company, Inc. v. Grinnell, supra; Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546, 548–49 (Tex. 1985).

### Background Facts

Prior to his retirement in April 1999, Slusser was a field vice president and regional director of sales for UBI. As a field vice president, Slusser had the responsibility to appoint suitable general agents to represent UBI in his region. His written employment contract set forth the commission rates that he would receive based on business generated by the general agents. Slusser claims that, from 1987 until 1994, UBI computed his insurance renewal commissions incorrectly and paid him less commissions than were due. Slusser's compensation was changed after 1994, and he does not claim any amounts for the period from 1994 until he retired.

In 1992, a former field vice president of UBI told Slusser that he had information that UBI might have underpaid commissions to the field vice presidents for several years. He advised Slusser to look into the matter. In late 1992, Slusser asked George Kardell, the vice president of marketing operations, to investigate whether the correct amount of commissions were paid. Kardell promised Slusser that UBI would check into the claim.

Kardell directed Slusser's inquiry to another vice president, Leo Arsen, who was in charge of the commission accounting function. Kardell testified that he pursued the matter on behalf of Slusser and the other field vice presidents in 1993 and 1994. After a considerable period of time had elapsed, Arsen advised Kardell that Kardell would have to go to Don Rutherford, the senior vice president of marketing, for an answer because the senior officers of UBI had instructed Arsen not to get involved in compensation issues for field vice presidents. In late 1995, UBI's general counsel, Dan Gail, advised Kardell that UBI's outside law firm had determined that UBI owed nothing further on the past commissions and that, in any event, the field vice presidents' claims were barred by limitations. Kardell requested that Gail put his position in writing. Gail addressed a memorandum dated January 11, 1996, to Rutherford in which Gail noted that Kardell and some of the field vice presidents were threatening to sue, that their suits were baseless, and that their claims were barred by limitations. Kardell gave a copy of the Gail memorandum to Slusser a few days later.

Slusser testified by affidavit that he and Kardell believed that Gail's conclusion concerning the calculation of commissions for field vice presidents was wrong because it was based on a misreading of a 1985 change in the payment of insurance commissions to general agents. According to Slusser, Gail was not with UBI when the commission arrangements were changed for the general agents; therefore, Gail did not know that the change did not affect the field vice presidents. After the Gail memorandum was written, Slusser and Kardell pressed their claims with Glen Gettier, who had become president of UBI after new owners purchased UBI in December 1995. Gettier called a meeting in March 1996 with the field vice presidents. Gettier said that he would look into the matter, and he "renewed the promises that UBI would pay the Field Vice Presidents whatever it owed." It appears that nothing further was done by either side until Slusser filed this lawsuit on December 30, 1999.

In its motion for summary judgment, UBI asserted that Slusser's lawsuit was barred by limitations because it was filed more than four years after the last commission payment was due in 1994. In his response to UBI's motion for summary judgment, Slusser claimed that his causes of action did not accrue prior to January 11, 1996, the date of the Gail memorandum; therefore, his breach of contract claim was filed within the four-year limitations period for actions in debt, TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon Supp.2002), and his fraud, fraudulent concealment, and breach of fiduciary duty claims were filed within the four-year limitations period set forth in TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 1997).

*Limitations*

■ Sections 16.004 and 16.051 provide that a cause of action must be brought within four years beginning "after the day the cause of action accrues." A cause of action generally accrues when the wrongful act effects an injury, regardless of when the plaintiff learned of the injury. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). Accrual of a cause of action is deferred in two types of cases: (1) those involving fraud or fraudulent concealment and (2) those where the injury is "inherently undiscoverable" and is "objectively verifiable." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.1996); *Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996). In *S.V. v. R.V.*, supra at 4, the Texas Supreme Court noted that, strictly speaking, the second type of cases are properly referred to as discovery rule cases; later, however, the court referred to both types of cases as discovery rule cases. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997). Because Slusser's pleadings and arguments include the discovery rule, fraud, fraudulent concealment,

and breach of fiduciary duty, our analysis will be in terms of the two types of cases.

■ To avoid relying on the discovery rule, Slusser argues that his contract claim did not accrue until the Gail memorandum was issued in January 1996 because that was when his claim for additional commissions was refused. We disagree. A cause of action for breach of contract is generally regarded as accruing when the contract is breached or when the claimant has notice of facts sufficient to place him on notice of the breach. *Rose v. Baker & Botts*, 816 S.W.2d 805, 810 (Tex.App.-Houston [1st Dist.] 1991, writ den'd). Where the terms of an agreement call for fixed, periodic payments, a separate cause of action arises for each missing payment. *F.D. Stella Products Co. v. Scott*, 875 S.W.2d 462 (Tex. App.-Austin 1994, no writ).

■ Slusser cites *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.), for the proposition that a cause of action for the breach of a promise to pay arises when a demand for payment has been made and refused. *Intermedics* involved an oral contract for employment where there was no agreement as to when the promised company stock would be issued to the plaintiff. Slusser had a written contract, and he was paid commissions when the insureds paid their premiums. Slusser admits that the payments to him were made; he simply claims that the wrong amounts were paid. No demand for payment was required for his claims for additional payment to accrue. See *Sun Medical, Inc. v. Overton*, 864 S.W.2d 558 (Tex.App.-Fort Worth 1993, writ den'd). Slusser's claims for additional payment accrued each time UBI paid a commission payment. See *Townewest Homeowners v. Warner Communication, Inc.*, 826 S.W.2d 638 (Tex.App.-Houston [14th Dist.] 1992,

718

no writ). Even if demands for payment were required, such demands must be made within a reasonable time. *Irwin v. Prestressed Structures, Inc.*, 471 S.W.2d 865, 867–68 (Tex.Civ.App.-Eastland 1971, writ ref'd n.r.e.).

### The Discovery Rule

■ Alternatively, Slusser argues that the discovery rule tolled limitations on his breach of contract claim until the Gail memorandum was issued in January 1996. Slusser's argument is that he could not "discover" whether the wrong amounts were being paid because UBI's accounting department had the information required to make the correct calculations and that the Gail memorandum was the first indication that the wrong amounts had been paid.

■ The discovery rule is an exception to the general rule of claim accrual. The judicially-created discovery rule requires that the nature of the injury must be inherently undiscoverable and that the injury must be objectively verifiable. *HECI Exploration Company v. Neel*, 982 S.W.2d 881, 886 (Tex.1998).

The Texas Supreme Court in *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732 (Tex.2001), held that an underpayment of royalties was not inherently undiscoverable despite the royalty owners' argument that the lessee was the sole source of information. In *Computer Associates International, Inc. v. Altai, Inc.*, supra, the court held that the misappropriation of trade secrets by a former employee was not inherently undiscoverable despite the fact that the employee was utilizing those trade secrets while working for a competitor of the plaintiff. Expecting Slusser, a vice president, to discover improper commission payments within his own company is less onerous than expecting royalty owners to discover whether their royalty pay-

ments are correct or expecting software companies to detect the theft of trade secrets being used by competitors. Slusser's claim for additional commissions was not inherently undiscoverable.

■ Slusser also argues that the discovery rule applies to his breach of fiduciary duty claim. The supreme court categorized fiduciary duty cases under the discovery rule, but the court held that the injuries from a breach of fiduciary duty are presumed to be inherently undiscoverable. *Computer Associates International, Inc. v. Altai, Inc.*, supra at 456; see *Little v. Smith*, 943 S.W.2d 414, 425 (Tex.1997)(Enoch, J., concurring). Because of this presumption, breach of fiduciary duty cases are treated like fraud cases in terms of deferral of the cause of action; the issue is when the plaintiff knew or should have known, with the exercise of reasonable diligence, of his or her injury. *Computer Associates International, Inc. v. Altai, Inc.*, supra at 455–56. We will assume, without deciding, that UBI owed Slusser a fiduciary duty.

Slusser admits that a former UBI field vice president in 1992 put him on notice that UBI might be underpaying the amount of commissions due to field vice presidents. Using reasonable diligence, Slusser should have learned of any underpayment of commissions within four years after the advice that Slusser should look into the matter.

### Fraud and Fraudulent Concealment

■ The Texas Supreme Court has said that the commission of fraud or fraudulent concealment works to estop a defendant from asserting limitations as a defense because "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.*, supra

at 6; see *Computer Associates International, Inc. v. Altai, Inc.,* supra at 455–56; *Nichols v. Smith,* 507 S.W.2d 518, 519 (Tex.1974). When the fraud is not known to the injured party, the limitation period commences on the date the fraud is discovered or should have been discovered by reasonable diligence. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex. 1988).

 Any fraud or fraudulent concealment in connection with commission payments to Slusser during the period 1987 through 1994 should have been discovered by reasonable diligence beginning in 1992. See *Computer Associates International, Inc. v. Altai, Inc.,* supra at 455–56. Slusser argues, however, that UBI's fraud also encompassed false statements that UBI would investigate the matter and pay Slusser any amounts owed and that he relied on those statements to delay filing his lawsuit.

The elements of common-law fraud are: (1) a material representation that was false; (2) the party making the representation knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the party making the representation made it with the intention to induce the other party to act upon the representation; and (4) the party to whom the representation was made actually and justifiably relied upon the representation and thereby suffered injury. *Ernst & Young v. Pacific Mutual Life Insurance Company,* 51 S.W.3d 573, 577 (Tex.2001).

 The statements to the effect that UBI would look into the matter were, at most, promises of future performance. A promise of future performance constitutes an actionable misrepresentation only if the promise is made with no intention of performing it at the time it was made. *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 47–48 (Tex.1998). Slusser has not shown that, at the time the UBI officers said that they would look into the matter, their statements were false. The Gail memorandum is evidence that UBI investigated the matter; Slusser simply believed that Gail did not know the facts and reached the wrong conclusion.

Slusser also failed to show that his reliance on UBI's statements that the company would look into the matter was justifiable. Although his reliance on the statements may have been reasonable in 1992 and 1993, Slusser's continued reliance was not justifiable. We overrule appellant's sole issue on appeal.

### This Court's Ruling

We affirm the summary judgment ruling of the trial court.