Peters v









NO. 12-09-00099-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

TRUMAN ARNOLD COMPANIES,            
§                    APPEAL FROM THE 217TH

APPELLANT                        

 

V.                                                                     
§                    JUDICIAL DISTRICT COURT

 

HAMMOND AND CONSULTANTS

ENTERPRISES, INC.,

APPELLEE                                                    
§                    ANGELINA COUNTY, TEXAS







MEMORANDUM
OPINION

            Truman Arnold Companies appeals the trial court’s judgment entered in
favor of Hammond and Consultants Enterprises, Inc.  Truman Arnold raises seven
issues on appeal.  We modify in part, and affirm as modified.

 

Background

Hammond
and Truman Arnold entered into a contract pursuant to which Hammond assisted
Truman Arnold in its efforts to obtain grocery store chains as customers for
its gasoline and Truman Arnold paid Hammond commissions based on sales made to
customers brought to it by Hammond.  Initially, the contract provided that Hammond
would receive 0.003 cents per gallon of gasoline Truman Arnold sold to one of Hammond’s
customers.  But soon thereafter, the parties modified the contract to provide that
Hammond’s commission was one-half the net profit from every gallon of gasoline
sold to one of its customers.[1]

In
sum, a Hammond customer was a customer that Hammond contacted and put in touch
with Truman Arnold.  Truman Arnold determined the price that it would charge
the customer for gasoline.  If Truman Arnold ultimately sold the customer
gasoline, Hammond was entitled to one‑half the net profits from the
sale.  If, for any reason, Truman Arnold chose not to sell the customer
gasoline, then Hammond was not entitled to receive a commission.

After
several years, Hammond concluded that Truman Arnold was not paying all the
commissions owed to it pursuant to the contract.  Hammond and Truman Arnold had
several meetings regarding this dispute.  Eventually, Truman Arnold informed
Hammond to hire an attorney if it wanted to be paid.  In response, Hammond filed
the instant suit for breach of contract.

The
matter proceeded to a jury trial.  Ultimately, the jury found that (1) Truman
Arnold breached its contract with Hammond, (2) Hammond suffered damages of
$12,875.00 from 1997 through 1999, damages of $324,568.00 from 2000 through
2008, and future damages of $498,245.00, and (3) Hammond incurred attorney’s
fees of $89,973.00 through trial, would incur $10,000.00 more in attorney’s
fees in an appeal to the court of appeals, and would incur $7,500.00 more in
attorney’s fees in an appeal to the Supreme Court of Texas.  The trial court
rendered judgment in accordance with the jury’s verdict.  This appeal followed.

 

Statute of Limitations

In
its third issue, Truman Arnold argues that some of Hammond’s claims for
commissions are barred by the applicable four year statute of limitations.[2]  Hammond
contends that Truman Arnold failed to obtain a jury finding regarding its
affirmative defense of limitations.

Applicable
Law

Breach
of contract claims must be brought “not later than four years after the day the
cause of action accrues.”  Tex. Civ.
Prac. & Rem. Code Ann. § 16.004 (Vernon 2002).  To bar a suit based
on limitations, the party asserting limitations must establish the
applicability of the limitations statute and the date on which the opponent’s
cause of action accrued.  See Davis Apparel v. Gale-Sobel,
117 S.W.3d 15, 17 (Tex. App.–Eastland 2003, no pet.).  A breach of contract
cause of action generally accrues when the contract is breached.  See Slusser
v. Union Bankers Ins. Co., 72 S.W.3d 713, 717 (Tex. App.–Eastland 2002,
no pet.).  However, the discovery rule may serve to delay the commencement of
the limitations period for a breach of contract action.  See Barker v.
Eckman, 213 S.W.3d 306, 311–12 (Tex. 2005).  For the discovery rule to
apply, the nature of the injury must be inherently undiscoverable and the
injury must be objectively verifiable.  See id. at 312.  

 
When the contract requires fixed, periodic payments, a separate cause of action
accrues each time a payment is missed.  Slusser, 72 S.W.3d at
717.  Similarly, when payment for commissions earned is made in the wrong
amount, the claim for the unpaid amount accrues at the time the commission
payment was due.  See Kardell v. Union Bankers Ins. Co., No.
05-01-00662-CV, 2002 WL 1809867, at *3–4 (Tex. App.–Dallas Aug. 8, 2002, no
pet.).  As such, it has been held that claims for additional commissions are
not inherently undiscoverable.  See Slusser, 72 S.W.3d at 718.  Thus,
a claimant can recover any unpaid commissions that became due within the
limitations period, but commissions due outside the limitations period are
barred.  Spin Doctor Golf, Inc. v. Paymentech, L.P., 296 S.W.3d
354, 363 (Tex. App.–Dallas 2009, pet. denied).

When
the fact issues relevant to a limitations issue are established as a matter of
law, the party asserting limitations is not required to obtain fact findings.  Barker,
213 S.W.3d at 310.  Additionally, when a party attempts to use the discovery
rule to avoid limitations, the party seeking to benefit from the discovery rule
has the burden of obtaining findings to support its application.  Id.

Analysis

In
the case at hand, Truman Arnold introduced into evidence Hammond’s original
petition filed on March 31, 2004.  Truman Arnold also pleaded as an affirmative
defense that Hammond’s damages sought were barred by limitations.  Thus, Truman
Arnold argued at trial that the jury should not be asked about damages incurred
by Hammond from 1997 through 1999.  

Truman
Arnold’s third issue turns on the timing of Hammond’s commissions.  We look to
the parties’ contract to determine whether the parties addressed the timing of
these payments.[3]
 The original written contract between the parties states, in pertinent part, that
“[Truman Arnold] agrees to remit compensation on a _______ (Monthly) basis to
[Hammond].”  The method of determining compensation was later modified.  But no
evidence was presented that the timing of payment changed.  Further, we note
that the blank space before “(Monthly)” was not filled in.  However, the
parties’ omission of additional language indicating the number of times per
month Hammond should be compensated does not serve to render this section of
the contract ambiguous.  Based on our reading of the contract, Truman Arnold
was required to make commission payments to Hammond on a monthly basis.  Consequently,
any commission payments Hammond earned from 1997 through 1999 had become due,
and any cause of action related to those commission payments accrued more than
four years before suit was filed.  Accordingly, we hold that Truman Arnold
presented sufficient evidence to establish that Hammond’s claims for
compensation due between 1997 through 1999 were barred as a matter of law by
limitations.  Because the claims were barred as a matter of law, no jury
question was necessary on the issue.  See Barker, 213 S.W.3d at
310.  Truman Arnold’s third issue is sustained in part and overruled in part. 
Accordingly, the damage award for compensation due between 1997 through 1999 should
be reduced from $12,875.00 to $0.00.  

 

Expert Witness Testimony

In
its second issue, Truman Arnold argues that the testimony of Hammond’s expert
witness, Robert Bailes, should have been excluded.

Applicable
Law

Generally,
the admission and exclusion of evidence is committed to the sound discretion of
the trial court. See Owens-Corning Fiberglas Corp. v. Malone, 972
S.W.2d 35, 43 (Tex. 1998); see also Gee v. Liberty Mut. Fire Ins.
Co., 765 S.W.2d 394, 396 (Tex. 1989).  The trial court's decision to
admit or exclude expert testimony is reviewed for abuse of discretion.  Gammill
v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998).  “The
test for abuse of discretion is whether the trial court acted without reference
to any guiding rules or principles.”  E.I. du Pont de Nemours & Co.
v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995).  

Rule
702 contains three requirements for the admission of expert testimony:  (1) the
witness must be qualified, (2) the proposed testimony must be scientific,
technical, or other specialized knowledge, and (3) the testimony must assist
the trier of fact to understand the evidence or to determine a fact in issue.  See
Tex. R. Evid. 702; see
also Robinson, 923 S.W.2d at 556.  In order to constitute the type
of knowledge that will assist the trier of fact, the proposed testimony must
also be relevant and reliable.  Id.  The trial court is
responsible for making the preliminary determination of whether the proffered
testimony meets the standards.  Id.  Rule 702's language makes no
pertinent distinction between “scientific” knowledge and “technical” or “other
specialized” knowledge.  See Kumho Tire Co. v. Carmichael, 526
U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238 (1999).  Thus, any
knowledge of these types might become the subject of expert testimony.  See
id., 526 U.S. at 147, 119 S. Ct. at 1174.

To
be relevant, the proposed testimony must be “sufficiently tied to the facts of
the case that it will aid the jury in resolving a factual dispute.”  Robinson,
923 S.W.2d at 556 (quoting United States v. Downing, 753 F.2d
1224, 1242 (3d Cir. 1985)).  Additionally, any evidence that is not grounded “in
the methods and procedures of science” is no more than “subjective belief or
unsupported speculation.”  Robinson, 923 S.W.2d at 557 (citing Daubert
v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590, 113 S. Ct. 2786, 2795,
125 L. Ed. 2d 469 (1993)).  Unreliable evidence is of no assistance to the
trier of fact and is therefore inadmissible under rule 702.  Id. 
A claim will not stand or fall on the mere allegation of a credentialed
witness.  See Burrow v. Arce, 997 S.W.2d 229, 235 (Tex. 1999). 

There
are many factors that a trial court may consider in making the threshold
determination of admissibility under rule 702.  Robinson, 923
S.W.2d at 557.  These factors include (1) the extent to which the theory has
been or can be tested; (2) the extent to which the technique relies upon the
subjective interpretation of the expert; (3) whether the theory has been
subjected to peer review and/or publication; (4) the technique's potential rate
of error; (5) whether the underlying theory or technique has been generally
accepted as valid by the relevant scientific community; and (6) the nonjudicial
uses that have been made of the theory or technique.  Id. 
Additionally, “[a] court may conclude that there is simply too great an
analytical gap between the data and the opinion proffered.”  Gammill,
972 S.W.2d at 726 (quoting Gen. Elec. Co. v. Joiner, 522 U.S.
136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)).  A Daubert
inquiry must be “tied to the facts” of the particular case.  See Kumho
Tire Co., 526 U.S. at 149, 119 S. Ct. at 1175 (quoting Daubert,
509 U.S. at 594, 113 S. Ct. at 2786). 

Analysis

In
the instant case, Bailes carefully and specifically stated that he was not
offering any expert opinions regarding Hammond’s future damages.  Rather, according
to Bailes, he performed calculations extending the alleged damages sustained to
date into the future and performed calculations discounting those numbers to
present day dollars.  But Bailes opined only about the value of Hammond’s past
lost commissions.  

Truman
Arnold argues that Bailes’s testimony is flawed because he used the income and
expenses for the entire division to determine an average profit per gallon of
gasoline sold.  From that figure, Bailes determined Hammond’s lost commissions
by multiplying the average profit per gallon of gasoline sold by the number of
gallons sold to Hammond’s customers and dividing that number by two.  Truman
Arnold argues that Bailes should have used the gross profit numbers provided by
Truman Arnold for Hammond’s customers, subtracted thirty-five points, or 0.0035
cents, per gallon as expenses, and divided that number by two.  We disagree.

First,
it is apparent that Hammond was skeptical concerning the accuracy of the
figures provided by Truman Arnold.  Truman Arnold did not produce documentation
to establish the accuracy of its gross profit figures.  The record further reflects
that if Truman Arnold could not make money selling gasoline to a customer, it
stopped selling to that customer.  Further, Hammond had a duty to bring the
customer to Truman Arnold, but it was Truman Arnold’s obligation to negotiate
any sales.  As a result, Truman Arnold determined whether it would sell to a
customer and at what price.

Moreover,
the records Truman Arnold produced indicate unusual profit margins.  Repeatedly,
the figures indicate sales of millions of gallons of gasoline, which resulted
in profit margins per gallon of gasoline sold that were much lower than the
average per gallon of gasoline sold throughout the division.  For instance, with
regard to sales of more than 2.7 million gallons of gasoline to Brush Grocery from
2002 through 2005, the gross profit was only $13,211.25.  For sales of more
than 4 million gallons of gasoline to HEB from 2000 through 2005, the gross
profit was only $11,440.56.  And perhaps most unusual, for sales of more than
100 million gallons of gasoline to KVAT Food from 2003 through 2005, the gross
profit was only $222,151.49, a margin less than the thirty-five points per
gallon that Truman Arnold alleged constituted its expenses per gallon.    

Second,
Truman Arnold complains that Hammond’s skepticism concerning its gross profit
figures should have resulted in a discovery dispute rather than Hammond’s expert
witness’s relying on division wide figures to calculate gross profits. 
However, Hammond did, in fact, seek more specific information by requesting in
discovery Truman Arnold’s records concerning the total gallons sold, profits,
and expenses on Hammond’s claimed customers.  Truman Arnold objected that these
requests were overly broad and unduly burdensome.  Hammond filed a motion to
compel, which the trial court granted in part.  Only then did Truman Arnold produce
additional information.  The record is not clear whether Truman Arnold withheld
additional reports relevant to Hammond’s claimed damages or if no additional
information existed.

Even
still, Hammond concluded that the reports produced by Truman Arnold contained
inconsistencies.  Hammond addressed these inconsistencies and obtained
additional, more accurate reports from Truman Arnold.  Thus, Hammond made
efforts to have reliable information on which to base its damages calculations.

Third,
Truman Arnold’s preferred method of calculating net profits on Hammond’s
claimed clients ignores the existence of a large income stream.  From its
gasoline sales, Truman Arnold received rebates and credits.  From 2000 through
2008, those rebates and credits amounted to millions of dollars in additional
profits to Truman Arnold.  Because the sales to Hammond’s claimed customers
contributed to a portion of Trumon Arnold’s receipt of these additional profits,
Bailes opined that this income stream should be considered.  Because these
profits were not tied to individual clients, the only method to include this
additional income stream was to calculate the profits based on the average
profit from the entire division.

Finally,
Truman Arnold admits that the net profits could be only estimates.  Yet Truman
Arnold argues that using its gross profit figures for Hammond’s claimed
clients, subtracting thirty-five points per gallon of gasoline sold, and
dividing that number by two more closely approximates Hammond’s alleged lost
commissions than Bailes’s method.  However, Truman Arnold’s method is no less
an estimate of Hammond’s alleged lost commissions.  Hammond should not be
denied recovery simply because the exact amount of its damages is incapable of
ascertainment.  See Vance v. My Apartment Steak House of San
Antonio, Inc., 677 S.W.2d 480, 484 (Tex. 1984).  It follows that Bailes’s
opinion regarding Hammond’s damages should not be excluded simply because the
exact amount of Hammond’s damages is incapable of ascertainment.

In
sum, Bailes estimated Hammond’s lost commissions.  But calculating these
commissions by obtaining a division wide average net profit per gallon and
dividing that number by two does not result in such a great analytical gap between
the data and the opinion proffered that the trial court’s decision to allow his
testimony to amount to a clear abuse of discretion.  See Gammill,
972 S.W.2d at 726.  Accordingly, we hold that the trial court did not abuse its
discretion in allowing Bailes to provide his expert opinion concerning Hammond’s
damages suffered from 2000 through 2008.  Truman Arnold’s second issue is
overruled.

 

Evidentiary Sufficiency

In
its first issue, Truman Arnold argues that the evidence supporting Hammond’s award
of damages is both legally and factually insufficient.  

Standard
of Review

A
party who challenges the legal sufficiency of the evidence to support an issue
upon which it did not have the burden of proof at trial must demonstrate on
appeal that there is no evidence to support the adverse finding.  Bright
v. Addison, 171 S.W.3d 588, 595 (Tex. App.–Dallas 2005, pet. denied).  When
reviewing a challenge to the legal sufficiency of the evidence, we must
determine “whether the evidence at trial would enable reasonable and fair
minded people to reach the verdict under review.”  City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  In making this determination,
we must credit favorable evidence if a reasonable finder of fact could, and
disregard contrary evidence unless a reasonable finder of fact could not.  Id.
 The finder of fact is the sole judge of the credibility of the witnesses and
the weight to be assigned to their testimony.  See Canal Ins. Co. v.
Hopkins, 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied)
(citing City of Keller, 168 S.W.3d at 819).  The finder of fact
is free to believe one witness and disbelieve another, and reviewing courts may
not impose their own opinions to the contrary.  Id.  Accordingly,
we must assume that the finder of fact decided all credibility questions in
favor of the findings if a reasonable person could do so.  Id.  If
a reasonable finder of fact could have done so, we must further assume that the
finder of fact chose what testimony to disregard in a way that favored the
findings.  See Canal, 238 S.W.3d at 557 (citing City
of Keller, 168 S.W.3d at 820).

When
considering a challenge to the factual sufficiency of the evidence, we examine
the entire record to determine whether a finding is clearly wrong and unjust.  See
Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss, 202 S.W.3d 427,
437 (Tex. App.–Texarkana 2006, no pet.).  We must consider and weigh all of the
evidence, not just the evidence that supports the verdict.  See Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  We can set
aside the verdict only if it is so contrary to the overwhelming weight of the
evidence that the verdict is clearly wrong and unjust.  Id.; Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  This court is not a fact
finder.  See Justiss, 202 S.W.3d at 437.  Accordingly, we may not
pass on the witnesses’ credibility or substitute our judgment for that of the
fact finder, even if the evidence would clearly support a different result.  See
Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex.
2003); Ellis, 971 S.W.2d at 407.  If we find the evidence is
factually insufficient, we must clearly state why the finding is insufficient
or is so against the great weight and preponderance of the evidence as to be
manifestly unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986).

Lost
Profits

Proof
of damages based on lost profits does not require that the lost profits be
susceptible to exact calculation.  See Helena Chem. Co. v. Wilkins,
47 S.W.3d 486, 504 (Tex. 2001).  However, the lost profits must be supported by
competent evidence and demonstrated with reasonable certainty.  See id. 
In determining whether the losses have been shown with reasonable certainty, we
conduct a fact intensive analysis and require, at a minimum, that the losses be
based on objective facts, figures, or data.  See id.

Damages
based on anticipated future lost profits cannot be recovered if they are
dependent on uncertain and changing conditions, including market fluctuations,
or if there is no evidence from which they may be intelligently estimated.  Tex.
Instruments, Inc. v. Teletron Energy Mgmt., Inc., 877 S.W.2d 276, 279
(Tex. 1994) (quoting Sw. Battery Corp. v. Owen, 131 Tex. 423, 115
S.W.2d 1097, 1098–99 (1938)).  Evidence of past profits coupled with other
facts and circumstances may establish lost profits with reasonable certainty.  See
Helena Chem., 47 S.W.3d at 505.

2000–2008
Damages

We
have previously held that the trial court properly admitted Bailes’s testimony
on past damages.  Yet, even had we not considered Bailes’s testimony, the
result would not differ.  Truman Arnold argues that Hammond’s commissions were
to be figured by first determining the gross profits from the sales of gasoline
to Hammond’s customers and deducting thirty-five points or 0.0035 cents per
gallon.  Hammond’s commission was to be one-half of the resulting number. 
Hammond’s exhibits 8 and 9 provided the jury with Truman Arnold’s figures for
gross profit and gallons of gasoline sold for the claimed Hammond customers.  Consequently,
the jury had the information necessary to perform Truman Arnold’s preferred
calculations.  In performing those calculations, the jury could have awarded
Hammond more than one million dollars in damages, but chose instead to award
him $324,568.00.  As such, we conclude that there is legally sufficient
evidence to support the jury’s award of damages to Hammond for 2000 through 2008.

Moreover,
we have reviewed the entirety of the record and have considered and weighed all
of the evidence.  Having done so, we have not determined that any evidence
tending to contradict the evidence supporting the jury’s findings is of such
character so as to cause us to conclude that the jury’s award of damages for
2000 through 2008 is clearly wrong and unjust.  Thus, we hold that the evidence
is factually sufficient to support the jury’s award of these damages.

Future
Damages

            Turning
to the jury’s award of future damages, we again note that Bailes carefully
explained that he was not offering an opinion regarding future damages.  Bailes
explained that he performed calculations based on Hammond’s alleged lost
profits from 2008, but had no opinion concerning whether those damages would
occur in the future.  Instead, he stated that the figures were provided so that
the jury would have the present value of the future damages if it determined
that an award of future damages was warranted.

Hammond
testified that Truman Arnold’s conduct would continue to cause him damages in
the future.  However, Hammond did not offer an opinion concerning the amount of
damages that he would suffer in the future as a result of Truman Arnold’s
actions.  Instead, Hammond, through Bailes’s testimony, extended the damage
calculation for 2008 into the future for what Hammond admitted was an
“arbitrary” number of years.  Hammond offered evidence that his customers were
still purchasing gasoline from Truman Arnold.  But there is no testimony from
any of these customers establishing that any of them intended to purchase
gasoline from Truman Arnold in the future.  Further, no evidence was presented regarding
the estimated amount of gasoline that would be purchased in the future or the
estimated net profits that Truman Arnold would receive from such sales.  Based
on our review of the record in the light most favorable to the jury’s verdict,
we conclude that the evidence is not legally sufficient to support the jury’s award
of future damages.

Holding

Truman
Arnold’s first issue is sustained with regard to the jury’s award of future
damages[4]
and overruled with regard to the jury’s award of damages from 2000 through
2008.  Accordingly, the damage award for future damages should be reduced from $498,245.00
to $0.00.  

 

Jury Charge

In
its fourth and fifth issues, Truman Arnold contends that the trial court erred
in refusing to include two proposed instructions in its charge.  Truman Arnold
requested that the charge include the following instructions:

 

You are instructed that Truman Arnold Companies
breached its agreement with Hammond and Consultants Enterprises, Inc. with respect
to a customer if:

 

Hammond and Consultants Enterprises, Inc. was the
procuring cause of a sale, if any, by Truman Arnold Companies to that customer;
and

 

Truman Arnold Companies failed to pay commissions to
Hammond and Consultants Enterprises, Inc. on that sale.

….

 

Consider the following elements of damages, if any,
and none other:

 

Unpaid commissions, if any, equal to one-half of the
net profit to Truman Arnold Companies on Sales for which Hammond and
Consultants Enterprises, Inc. was the procuring cause.

 

 

A
trial court's refusal to include an instruction in the court’s charge is
reviewed under an abuse of discretion standard.  See Magro v.
Ragsdale Bros., Inc., 721 S.W.2d 832, 836 (Tex. 1986).  To establish an
abuse of discretion, the requested instructions must be necessary to enable the
jury to render a proper verdict so that the court’s refusal probably caused the
rendition of an improper verdict.  Pitts v. Sabine River Auth. of Tex.,
107 S.W.3d 811, 819 (Tex. App.–Texarkana 2003, pet. denied).  A trial court is
required to submit a jury question if it controls the disposition of the case,
is raised by the pleadings and evidence, and properly submits the disputed
issues for the jury's determination. Id. at 820.  When a trial
court refuses a requested jury instruction, we examine whether the instruction
was reasonably necessary to enable the jury to render a proper verdict.  See
Tex. R. Civ. P. 277; Cleaver
v. Cundiff, 203 S.W.3d 373, 379 (Tex. App.–Eastland 2006, pet. denied).
 Because the jury should not be burdened with surplus instructions, not every
correct statement of the law belongs in the jury charge.  Cleaver,
203 S.W.3d at 379.  

The
two instructions Truman Arnold requested are similar because they each contain
the term “procuring cause.”  We initially note that neither of these written
requests for instructions contains a definition of the term “procuring cause.” 
At a minimum, a jury charge must define those words and other technical phrases
that have distinct legal meanings.  Barnett v. Coppell N. Tex. Court,
Ltd., 123 S.W.3d 804, 826 (Tex. App.–Dallas 2003, pet. denied).  The
term “procuring cause” has a distinct legal meaning.  See Black’s Law Dictionary 1208 (6th ed.
1990) (defining “procuring cause”); see also, e.g., Ramesh v. Johnson,
681 S.W.2d 256, 260 (Tex. App.–Houston [14th Dist.] 1984, writ ref’d n.r.e.)
(court defined “procuring cause” in its charge).  Because Truman Arnold failed
to make a written submission to the trial court of instructions that defined the
legal term “procuring cause” contained in those instruction, it cannot now
complain of the trial court’s omission of those instructions.  See Tex. R. Civ. P. 273; Jarrin v.
Sam White Oldsmobile Co., 929 S.W.2d 21, 25 (Tex. App.–Houston [1st
Dist.] 1996, writ denied).   

Even
assuming arguendo that Truman Arnold preserved the issue, the outcome would not
differ.  “Procuring cause” is defined as “the cause originating a series of
events, which, without [a] break in their continuity, result in the
accomplishment of the prime object.”  Black’s
Law Dictionary 1208.  Thus, “a broker will be regarded as the ‘procuring
cause’ of a sale, so as to be entitled to commission, if his or her efforts are
the foundation on which the negotiations resulting in a sale are begun.”  Id. 
But the broker cannot be justly considered the procuring cause of the sale
where the broker’s effort with a buyer has, after fair opportunity and without
any fault of the owner, resulted in no sale; the owner and buyer terminate
their negotiations; and, later, the owner, by direct and independent
negotiation effects a sale to the same buyer.  See Goodwin v. Gunter,
109 Tex. 56, 185 S.W. 295, 296 (Tex. 1916).  This rule applies even if the sale
is upon the same terms originally authorized by the broker.  See id.

Here,
the parties’ contract makes no reference to “procuring cause.”  Pursuant to the
plain language of the contract, Hammond was obliged to bring potential
customers to Truman Arnold.  If Truman Arnold later closed a sale with a
Hammond customer, Hammond was entitled to receive a commission.  Further, the
language of the contract does not include any provision preventing Hammond from
receiving commissions from sales of gasoline to a Hammond customer who stopped
buying gasoline from Truman Arnold for a period of time, but who bought gas
from it at a later date.  Therefore, because the obligations placed upon
Hammond by the contract do not use the term “procuring cause” or otherwise
entirely embody the concept of “procuring cause,” the trial court was not
required to instruct the jury using this term.  Accordingly, we hold that the
trial court did not err in refusing to submit Truman Arnold’s instructions that
contained the term “procuring cause.”  Truman Arnold’s fourth and fifth issues
are overruled. 

 

Attorney’s Fees and Interest

In
its sixth issue, Truman Arnold argues that the trial court erred in awarding
prejudgment interest on attorney’s fees.  After Truman Arnold filed its
appellate brief, the trial court rendered a judgment nunc pro tunc.  The judgment
nunc pro tunc removed the award of prejudgment interest on attorney’s fees. 
Thus, Truman Arnold’s sixth issue is overruled as moot.

In
its seventh issue, Truman Arnold contends that the trial court failed to
condition the award to Hammond of appellate attorney’s fees on an unsuccessful
appeal by Truman Arnold.  Hammond argues that the requirement of an
unsuccessful appeal is implied in the judgment.  Nevertheless, Hammond agrees
that the judgment could be reformed to clarify that the award of appellate
attorney’s fees is conditional.  See CPS Int’l, Inc. v. Harris &
Westmoreland, 784 S.W.2d 538, 545 (Tex. App.–Texarkana 1990, no writ)
(prevailing party at trial who did not prevail on appeal not entitled to
appellate attorney’s fees and trial court’s judgment reformed to delete that
award).  Truman Arnold’s seventh issue is sustained.

 

 

 

Conclusion

We
have sustained Truman Arnold’s first issue with regard to future damages, its third
issue in part with regard to damages from 1997 to 1999, and its seventh issue.  We
have overruled Truman Arnold’s first issue with regard to 2000 to 2008 damages,
its third issue with regard to damages in 2000, as well as its second, fourth,
and fifth issues.  We have overruled as moot Truman Arnold’s sixth issue. 

Accordingly,
we modify the trial court’s judgment in part by deleting the
award of “EIGHT HUNDRED THIRTY-FIVE THOUSAND SIX HUNDRED EIGHTY-EIGHT AND
NO/100 ($835,688.00) DOLLARS” and replacing it with an award of “THREE HUNDRED
TWENTY-FOUR THOUSAND FIVE HUNDRED SIXTY-EIGHT AND NO/100 ($324,568.00)
DOLLARS.”  We further modify the trial court’s judgment so that
the award of appellate attorney’s fees is made conditional on Truman Arnold’s
being unsuccessful in an appeal.  We affirm the trial court’s
judgment as modified.

 

                                                                                                Brian Hoyle

                                                                                                     
Justice

 

 

 

 

Opinion
delivered July 30, 2010.

Panel consisted of Worthen, C.J., Griffith, J., and
Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









                [1]
The parties disagree concerning the exact wording of the modification. 
Although Truman Arnold claims the modification was made in writing, the record
contains no evidence of this written modification.  Thus, while the parties
agree that the contract was modified to provide that Hammond’s commission was
changed to one-half of the net profit, they disagree on the method to be
utilized in calculating net profit.

 





                        [2] In its brief,
Truman Arnold argues that Hammond’s claims for commissions due from 1997 through
March 30, 2000, are barred by limitations.  However, at oral argument,
Truman Arnold clarified its position.  Specifically, Truman Arnold stated that
it contends Hammond’s claims for commissions due from 1997 to 1999 are barred
by limitations, but does not assert that Hammond’s claims relating to
commissions due from 2000 through 2008 are similarly time barred.

 





[3] In construing a written contract, the primary concern
of the court is to ascertain the true intentions of the parties as expressed in
the instrument.  Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983).  To achieve this objective, courts should examine and consider the
entire writing in an effort to harmonize and give effect to all the provisions
of the contract so that none will be rendered meaningless.  Id.  If
the written instrument is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous, and the court will
construe the contract as a matter of law.  Id.  We give terms their plain, ordinary, and generally
accepted meaning unless the instrument shows that the parties used the terms in
a technical or different sense.  See Birnbaum v. SWEPI LP, 48
S.W.3d 254, 257 (Tex. App.–San Antonio 2001, pet. denied). 





[4]
Because we have held that the evidence is legally insufficient to support the
jury’s award of future damages, we need not consider Truman Arnold’s argument
concerning the factual sufficiency of the evidence.  See Tex. R. App. P. 47.1.